## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| SILVESTER HAYES, | § | |
| | § | Civil Action No. _____ |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | |
| CITY OF DALLAS, DALLAS | § | JURY TRIAL DEMANDED |
| POLICE OFFICER HOLLY | § | |
| HARRIS, DALLAS POLICE | § | |
| OFFICER WALTER PAUL | § | |
| GUAB, DALLAS POLICE | § | |
| OFFICERS DOES 3 THOUGH 10 | § | |
| | § | |
| Defendants. | § | |

### PLAINTIFF SILVESTER HAYES' ORIGINAL COMPLAINT

**TO THE HONORABLE DISTRICT COURT JUDGE:**

**COMES NOW, PLAINTIFF SILVESTER HAYES** and, pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), files this, his First Amended Complaint and Jury Demand, against **DEFENDANT CITY OF DALLAS, TEXAS, DALLAS POLICE OFFICER HOLLY HARRIS, DALLAS POLICE OFFICER WALTER PAUL GUAB and DALLAS POLICE OFFICERS DOES 1 THROUGH 10** for violations of his Constitutional and Civil Rights under 42 U.S.C. 1983 and the Fourth and Fourteenth Amendment to the United States Constitution and in support thereof would respectfully shows as follows:

## I.   NATURE OF THE ACTION

1.      This is an action brought by the Plaintiff Silvester Hayes ("Plaintiff Hayes")

against The City of Dallas, Texas and Dallas Police Officers Walter Paul Guab

and Holly Harris and Dallas Police Officers DOES 1 through 10 for their use of

excessive force against Plaintiff Hayes and the unlawful arrest of Plaintiff Hayes

under the color of law, in violation of his individual rights under the Fourth

Amendment of the United States Constitution and, consequently, in violation of

his civil rights pursuant to 42 U.S.C. § 1983.

2.      Plaintiff Hayes alleges that Dallas Chief of Police Edgardo Garcia ("Chief

Garcia"), chief policymaker for the Dallas Police Department, with the authority

for setting policies, including training of the Dallas Police Officers, and the Dallas

City Council and the Dallas City Manager, vested with all powers of the City and

the determination of all matters of policy ("Defendant Dallas' Policy Makers"),

had a duty, but failed to implement and enforce such policies, practices and

procedures for the Dallas Police Department that respected Plaintiff Hayes'

constitutional rights.

3.      Defendant Dallas' Policy Makers' failure to implement the necessary

policies and the (de facto) implementation of unconstitutional policies, caused

Plaintiff Hayes to experience an unwarranted and excruciating physical and

mental anguish, Moreover, Dallas' Policy Makers' failure to implement the

necessary policies and the (de facto) implementation of unconstitutional policies, caused Plaintiff Hayes to suffer economic damages. For these civil rights violations and other causes of action discussed herein, Plaintiff Hayes seek answers and compensation for his respective damages.

## II.    THE PARTIES

4.    Plaintiff Hayes (hereinafter referred to as "Plaintiff Hayes") is an individual who resides in Dallas, Dallas County, Texas and may be served through his undersigned counsel of record.

5.    Defendant City of Dallas (hereinafter referred to as "Defendant Dallas" or collectively as the "Dallas Defendants") is and was at all times relevant herein a municipal entity created and authorized under the law of the State of Texas to maintain a Police Department which acts as its agent in the area of law enforcement. Defendant Dallas funds and operates the Dallas Police Department, which, along with the Dallas City Council, Dallas City Manager's office and Chief Garcia, are responsible for the implementation of the Dallas Police Department's budget, policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit. The Dallas Police Department is also responsible for preventive, investigative, and enforcement services for all citizens of the City of Dallas. All actions that form the basis of this lawsuit were performed pursuant to policies and procedures, customs, and

practices of Defendant Dallas. Dallas may be served with process by and through its City Attorney located at 1500 Marilla Street, Room 7DN, Dallas, Texas 75201.

6.      Defendant Dallas Police Holly Harris (hereinafter referred to as "Officer Harris" or collectively as the "Dallas Defendants") is an individual who at all times material herein, was a police officer allegedly acting in the course and scope of her employment for the City of Dallas and DPD.  At all times relevant to this lawsuit, it was Officer Harris' duty and responsibility to treat all persons in compliance with constitutional and statutory requirements and in compliance with the DPD's rules, regulations, policies and procedures, customs and/or practices relating to the use of excessive and/or deadly force. Defendant Officer Harris may be served at the Dallas Police Department headquarters located at 1400 Botham Jean Blvd., Dallas, TX 75215 or wherever she may be found. Defendant Officer Harris is being sued in her official and individual capacity.

7.      Defendant Dallas Police Walter Paul Guab (hereinafter referred to as "Officer Guab" or collectively as the "Dallas Defendants") is an individual who at all times material herein, was a police officer allegedly acting in the course and scope of her employment for the City of Dallas and DPD.  At all times relevant to this lawsuit, it was Officer Guab's duty and responsibility to treat all persons in compliance with constitutional and statutory requirements and in compliance with the DPD's rules, regulations, policies and procedures, customs

and/or practices relating to the use of excessive and/or deadly force. Defendant Officer Guab may be served at the Dallas Police Department headquarters located at 1400 Botham Jean Blvd., Dallas, TX 75215 or wherever she may be found. Defendant Officer Guab is being sued in his official and individual capacity.

8.      Plaintiff Hayes is unaware of the true names and capacities of those Defendant Police Officers sued herein as Defendants DOES 3 through 10, and therefore, Plaintiff Hays sues said Defendants by the fictitious name Dallas Police Officers DOES 3 through 10. Plaintiff Hayes is informed and believes, and thereupon alleges, that each of the Defendants designated herein as a DOE, was and is legally, equitably, or in some other actionable manner, responsible for the events and happenings herein referred to, and thereby negligently, carelessly, with deliberate indifference, or by reason of direct or imputed negligence or vicarious fault or breach of duty arising out of the matters herein alleged, legally and proximately caused the hereinafter alleged injuries and damages to the Plaintiff Hayes. Plaintiff Hayes will hereafter seek leave to amend this Complaint to set forth the true names and identities of the unknown named Dallas Police Officers DOES 3 through 10 when they are ascertained.

9.      Plaintiff Hayes is informed and believes and thereupon alleges that, at all times mentioned herein, that Defendant Officers Harris and Guab's as well as Defendant Dallas Police Officers DOES 3 through 10's pattern of conduct

towards the Plaintiff Hayes was in accord with the Defendant Dallas's and Dallas Police Departments' policy and/or custom that emanated from the Defendant Dallas' policymakers defined for the purposes of this complaint as the Dallas City Council and the official to whom it has delegated policy making authority over the Dallas Police Department, Defendant Dallas' City Manager.

10.     Plaintiff is informed, believes, and thereupon alleges that the Dallas Defendants were responsible for the events and happenings herein set forth and proximately caused injury and damages to Plaintiff Hayes as herein alleged and are jointly and severally responsible for Plaintiff Hayes's damages.

## III.   JURISDICTION

11.     This Court has Jurisdiction over the subject matter and parties pursuant to U.S.C. § 1331 and § 1343 because Plaintiff Hayes is suing for relief under 42 U.S.C. §1983 and because this case involves questions of federal law.

12.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1343 and because the Plaintiff Hayes seeks damages for violation of his Constitutional and Civil rights. Specifically, this Court has jurisdiction because this action is being brought by the Plaintiff Hayes to recover damages caused by violations of his Constitutional and Civil Rights under 42 U.S.C. § 1983, and the Fourth, and Fourteenth Amendments to the United States Constitution.

13.     Venue is proper in, and the Dallas County Defendants are subject to personal jurisdiction of this Court because the Dallas County Defendants reside in, maintain facilities and business operations in this District, and all or most of the events giving rise to this action occurred in this District. This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution. Plaintiff Hayes's state law claims share all common operative facts with his federal law claims and the parties are identical Resolving the Plaintiff Hayes's federal and state law claims in a single action serves the interests of judicial economy, convenience, and fairness to the parties.

## IV.  THE FACTS

14.     Like many other young black men and women residing in the Dallas community of South Oak Cliff, Plaintiff Hayes fears for his life every time that a Dallas Police Department cruiser is following his vehicle. He is terrified that one small mistake or misperception – by either the Police officer or himself – can cause him to lose his life and leave his children without a father.

15.     Despite these fears, Plaintiff Hayes had lived life as a law-abiding citizen and, prior to this incident, he had dreams of being a Dallas Police Officer.

16.     Unfortunately, this incident exemplifies that there is good reason for young black men to live in fear of interacting with the Dallas Police Department

and Plaintiff Hayes' intent in bringing this lawsuit is to ensure that this type of constitutionally defying conduct ends today.

17.  Plaintiff Silvester Hayes is a 27-year-old single father who worked as a security guard. In fact, prior to this incident, had never been arrested in his life. However, on October 16, 2021, Plaintiff Hayes and the lives of his children were fundamentally altered forever.

18.     On that October morning, Plaintiff Hayes woke up early and went out to purchase breakfast for his four young children. While driving to get his children's favorite breakfast meal of French toast and bacon at a restaurant that was located only a few blocks away from his residence, Plaintiff Hayes was racially profiled, followed and then pulled over by Defendant Officers Harris and Guab.

19.     Defendant Officer Guab approached the driver side window of Plaintiff Hayes' vehicle. When Plaintiff Hayes calmly asked why he was pulled over and explained that he was only out to get breakfast for his children, Defendant Officer Guab told Plaintiff Hayes the reason for the traffic stop. Although Defendant Officer Guab's explanation was suspicious and sounded obviously manufactured, Plaintiff Hayes did not argue with the officer and gave him his driver's license.

20.     In addition, Plaintiff Hayes disclosed to Defendant Officer Guab that he had a handgun in the vehicle that was lawfully registered in his name.

21.     Defendant Officer Guab then handed Defendant Officer Harris Plaintiff
Hayes' driver's license and then informed Defendant Officer Harris of Plaintiff
Hayes' name.

22.     Rather than run a check on Plaintiff Hayes' driver's license through the
Dallas Police Department's database that was accessible from the computer in
her Dallas Police Department cruiser, Defendant Officer Harris erroneously
informed Defendant Officer Guab that Plaintiff Hayes was wanted for a family
violence warrant.

23.     Tragically, the person that Defendant Officer Harris thought was
Plaintiff Hayes had a similar first name that was spelled "Sylvester" as opposed
to Plaintiff Hayes' first name which is spelled as "Silvester."

24.     Without verifying the erroneous information that was hap hazardously
provided to him by Defendant Officer Harris, Defendant Officer Guab marched
back to Plaintiff Hayes' driver's side window and without explanation
proceeded to reach inside Plaintiff Hayes' vehicle to open the driver's side door.

25.     Alarmed by this sudden escalation in aggression by Defendant Officer
Guab, Plaintiff Hayes repeatedly demanded to know what was going on. Instead
of providing Plaintiff Hayes with an explanation for forcibly removing him
from his vehicle, Defendant Officers Guab and Harris escalated their use of
force against Plaintiff Hayes.

P

26.      As Defendant Officers Guab and Harris were manhandling Plaintiff
Hayes, several Defendant Dallas Police Officer DOES 3 Through 10 pulled up
to the scene in several unmarked vehicles and Dallas Police Cruisers.

27.      In their rush to join the fight, Defendant Dallas Police Officer DOES 3
Through 10 did not consult with Defendant Officers Guab and Harris and did
not bother to ascertain that the now visible gun in Plaintiff Hayes' vehicle was
fully disclosed to Defendant Officer Guab and Harris and was in fact a lawfully
registered weapon. Therefore, it was no surprise that the Officers erroneously
presumed that a young black man with a gun was posed a threat and one or
more of the Defendant Dallas Police Officers DOES 3 through 10 frantically
started yelling "Gun!"

28.      In a proverbial case of gasoline being poured on a fire, having multiple
Dallas Police Officers yelling "Gun" only escalated the Officers' use of
excessive force on Plaintiff Hayes.

29.      In a blur of excessive force, all of which was documented by Defendant
Officers Guab and Harris as well as the Defendant Dallas Police Officers DOES
3 through 10's body cams, the Officers began to kick, punch, and unnecessarily
use their tasers on Plaintiff Hayes. Moreover, one or more of the Officers can
be seen dangerously pinning Plaintiff Hayes down with their knees on his skull,
neck and back. One of the Officers at the scene pulled Plaintiff Hayes' arm out

P

of his shoulder socket which has caused him on-going pain and mobility issues to this day.

30.     Mindful of the fact that too many young black men have lost their lives in similar excessive use of force incidents, Plaintiff Hayes resorted to begging for his life and pleading for help from bystanders and witnesses.

31.     The Defendant Officers Guab and Harris as well as the Defendant Dallas Police Officers DOES 3 through 10 ignored his pleas and only seemed to ramp up their use of violence whenever he cried out for help.

32.     Finally, the Officers hog tied Plaintiff Hayes' feet and they violently placed him in the back of one of a Dallas Police Department cruiser.

33.     Thereafter, one or more of the Officers can be heard justifying their violence by falsely accusing Plaintiff Hayes of being a felon that they were going to send to the feds and erroneously stating that there must be something to get him on.

34.     With Defendant Officer Guab as well as the Defendant Dallas Police Officers DOES 3 through 10 surrounding her Dallas Police Department cruiser excitely hoping that Defendant Officer Harris would find something to arrest Plaintiff Hayes for, Defendant Officer Harris finally checked Plaintiff Hayes' driver's license through the Dallas Police Department's database.

35.     To Defendant Officer Harris' apparent shock, the Dallas Police Department's database informed her that Plaintiff Hayes was not the same

P

person that she thought had a domestic violent warrant and she can be heard on the body cam footage exclaiming "Fuck, we got the wrong guy."

36.      Defendant Officer Harris' dismay and realization that a serious mistake had been made when her database check further informed her that Plaintiff Hayes had never been arrested in his life and that the gun in his possession was indeed his and was lawfully registered in his name.

37.      After the assault, the Dallas Police Department Sargent in charge of Defendant Officers Guab and Harris as well as the Defendant Dallas Police Officers DOES 3 through 10, informed Plaintiff Hayes of the case of mistaken identity and apologized for "his team roughing him up."

38.      The Dallas Police Department Sargent then consulted with Defendant Officer Guab and Harris who made several false statements regarding Plaintiff Hayes and the events surrounding his detention. Based on Defendant Officer Guab and Harris' misrepresentations and false representations, the Dallas Police Department Sargent encouraged Defendant Officers Guab and Harris to unlawfully arrest Plaintiff Hayes for Resisting Arrest and Unlawful Possession of a Weapon.

39.      As a result of Defendant Officers Guab and Harris' unlawful arrest, Plaintiff Hayes was arrested and held in jail for multiple days. Because Plaintiff was a security guard and his employer did not tolerate his being absent from his job for any reason, Plaintiff Hayes was terminated from his security guard job.

P

40.     Plaintiff Hayes' termination from his job as a security guard started a downward spiral that would continue wreak havoc on his life for the next fourteen months. The false charges that Plaintiff Hayes was unlawfully arrested for and charged with caused him to be unemployable as a security guard. As a result, he lost his home and he suddenly found himself unable to provide a home for his four young children.

41.     Defendant Officers Guab and Harris' violation of Plaintiff Hayes' constitutional and civil rights was the moving force that caused him to suffer injuries, economic injuries, emotional distress, and post-traumatic stress syndrome.

42.     After approximately 14 months of malicious and false prosecution, on December 9, 2022, Defendant Dallas finally acknowledged their mistakes and dismissed the false charges against Plaintiff Hayes.

43.     Defendant Officers Guab and Harris as well as the Dallas Police Officer DOES 1 through 10's deployed excessive force against Plaintiff Hayes as a result of the fact that they were following Defendant Dallas' policy and/or custom of deploying excessive force against a detainee.

44.     Defendant Dallas' Police Department's written policy on use of force is not the de facto policy of the Dallas Police Department. The de facto policy is that which Defendant Officers Guab and Harris as well as the Dallas Police Officer DOES 1 through 10's deployed employed when they decided to forcibly

P

pull Plaintiff Hayes from his vehicle and commence with (1) kicking, punching, and tasing Plaintiff Hayes, (2) pinning Plaintiff Hayes with their knees on his skull, neck and back; (3) pulling Plaintiff Hayes' arm out of his shoulder socket without warning and any attempt to de- escalate.

45.     Defendant Dallas' Police Department has a pattern, practice, history, and custom of using excessive force against minorities, racial profiling, detaining on false pretenses, and approaching them with guns drawn, when there is no imminent threat of bodily harm or other justifiable reason to do so. Defendant Dallas' Police Department trains its officers to use excessive force even when there exists no immediate threat to themselves or others.

46.     Defendant Dallas' Police Department did not provide adequate training to Defendant Officers Guab and Harris as it relates to the use of excessive force and the use of non-excessive force.

47.     Defendant Dallas' Police Department did not provide adequate training to Defendant Officer Harris to verify a suspect's identity and/or complete a check of a suspect's (such as Plaintiff Hayes) driver's license through the Dallas Police Department's database that was accessible from the computer in her Dallas Police vehicle before proceeding to detain that suspect.

48.     Defendant Dallas' Police Department did not provide adequate training to Defendant Officers Guab and Harris on proper arrest and confrontation techniques.

P

49.     Defendant Dallas' Police Department did not provide adequate training to Defendant Officers Guab and Harris on appropriate methods and techniques to control situations similar to the one encountered by them on October 16, 2021.

50.     Defendant Dallas' Police Department failed to adequately discipline Defendant Officers Guab and Harris for the misuse of force and/or the employment of excessive force on Plaintiff Hayes.

51.     Defendant Dallas' Policy Makers knew or should have known that the training provided to Defendant Officers Guab and Harris was inadequate or nonexistent.

52.     Defendant Officers Guab and Harris should have been well-trained to deal with unarmed citizens posing no threat of imminent bodily harm to them, other officers, or the general public. Defendant Officers Guab and Harris should have been well-trained how to deal with the need to verify a suspect's identity and/or complete a check of a suspect's (such as Plaintiff Hayes) driver's license through the Dallas Police Department's database that was accessible from the computer in her Dallas Police vehicle before proceeding to detain that suspect and/or before confronting that suspect.

53.     Defendant Officers Guab and Harris had a clear view of Plaintiff Hayes, however it is apparent, that instead of using any sort of de-escalation techniques, they opted to use excessive force.

P

54.     Defendant Officers Guab and Harris opened Plaintiff Hayes' vehicle's door and  immediately pushed him to the ground without an evaluation of what occurred  or  what  was  transpiring.   They  simply  deployed  excessive  force without  having  any  knowledge  of  the  true  situation  or  Plaintiff  Hayes'  true identity.  Essentially, Defendant Officers Guab and Harris were ill-trained, and as a result, defaulted to the defective DPD policy: to use excessive force even when there existed no immediate threat of harm to themselves or others.

55.     There existed no justification whatsoever for Defendant Officers Guab and Harris use of excessive force. Plaintiff Hayes was in his vehicle and was not committing a penal offense. Plaintiff Hayes was totally unaware of what was transpiring when Defendant Officers Guab and Harris deployed excessive force. Plaintiff Hayes was not attempting to harm anyone, nor did he appear menacing, threatening, or dangerous in any manner.

56.     There is no credible evidence whatsoever that Defendant Officers Guab and Harris or anyone else was in imminent danger that would indicate that the use of deadly force was justified.

57.     Defendant Officers Guab and Harris' unlawful and unwarranted acts, lack of training, lack of discipline and  the  official  customs  or  policies  of Defendant Dallas' Police Department was the  proximate  cause  of Plaintiff Hayes' damages and injuries.

P

58.      At all times material hereto, Defendant Officers Guab and Harris were acting in the scope of their employment as agent, servant and employee of Defendant Dallas' Police Department, a part of Defendant Dallas, within its executive branch and were performing a governmental function.

59.      Moreover, no reasonably competent officer would have concluded that Defendant Officers Guab and Harris' actions described herein would not, and did not, violate Plaintiff Hayes' constitutional rights. In other words, no reasonably prudent police officer under similar circumstances could have believed that Defendant Officers Guab and Harris' conduct was justified.

## V.      CAUSES OF ACTION
### COUNT ONE – EXCESSIVE FORCE:
### VIOLATION OF THE FOURTEENTH AMENDMENT
### PURSUANT TO 42 U.S.C. § 1983 AGAINST DEFENDANT
### DALLAS POLICE OFFICERS GUAB AND HARRIS

60.      Plaintiff Hayes repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

61.      Acting under the color of law, Defendant Dallas Police Officers Guab and Harris deprived Plaintiff Hayes of the rights and privileges secured to him by the Fourteenth Amendment to the United States Constitution and by other laws of the United States to be free from illegal and unreasonable seizures by the use of force.

62.      The amount of force used by Defendant Dallas Police Officers Guab and Harris against Plaintiff Hayes as alleged in the above events was objectively

P

unreasonable under the circumstances and inflicted unnecessary injury, pain, and suffering upon Plaintiff Hayes.

63.     A seizure is unreasonable if it results in (a) an injury, (b) that resulted directly and only from a use of force that was clearly excessive, and (c) the excessiveness was clearly unreasonable.

64.     Although officers may need to use "physical force ... to effectuate [a] suspect's compliance" when she refuses to comply with commands during a traffic stop, the officers still must assess "the relationship between the need and the amount of force used." *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012); quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009).

65.     Where an individual's conduct amounts to mere "passive resistance," use of force is not justified. *Trammell v. Fruge*, 868 F.3d 332, 341 (5th Cir. 2017).

66.     A constitutional violation occurs when an officer sprays, tases, strikes, or violently slams an arrestee who is not actively resisting arrest. *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 731 (5th Cir.), *cert. denied sub nom. City of Fort Worth, Tex. v. Darden*, 139 S. Ct. 69, 202 L. Ed. 2d 23 (2018).

67.     Fifth Circuit Court of Appeals case law makes clear that when an arrestee is not actively resisting arrest the degree of force an officer can employ is reduced. *Id.*

68.     In Texas, the use of force to resist an arrest is justified: (1) if, before the actor offers any resistance, the peace officer uses or attempts to use greater force

P

than necessary to make the arrest or search; and (2) when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the peace officer's use or attempted use of greater force than necessary. Tex. Penal Code Ann. § 9.31.

69.     Defendant Dallas Police Officers Guab and Harris' used excessive of force by grabbing and forcibly pushing Plaintiff Hayes to the ground and then joining Defendant Dallas Police Officers DOES 1 through 10 in (1) kicking, punching, and tasing Plaintiff Hayes, (2) pinning Plaintiff Hayes with their knees on his skull, neck and back; (3) pulling Plaintiff Hayes' arm out of his shoulder socket was greater force than was necessary to arrest Plaintiff Hayes because he was not resisting arrest.

70.     Plaintiff Hayes was not suspected of committing a felony offense when Defendant Dallas Police Officers Guab and Harris' used excessive force by grabbing and forcibly pushing Plaintiff Hayes to the ground and then joining Defendant Dallas Police Officers DOES 1 through 10 in (1) kicking, punching, and tasing Plaintiff Hayes, (2) pinning Plaintiff Hayes with their knees on his skull, neck and back; (3) pulling Plaintiff Hayes' arm out of his shoulder socket there was not probable cause to suspect him of committing any crime.

71.     Plaintiff Hayes was not attempting to flee or evade arrest, and when Defendant Dallas Police Officers Guab and Harris and the Defendant Dallas Police Officers DOES 1 through 10 began to apply handcuffs to his wrists.

P

72.      Plaintiff Hayes allowed Defendant Dallas Police Officers Guab and Harris and the Defendant Dallas Police Officers DOES 1 through 10  to apply handcuffs to his person prior to Defendant Dallas Police Officers Guab and Harris and the Defendant Dallas Police Officers escalating the situation and using force greater than necessary to affect the illegal arrest.

73.      A reasonable Police Officer in Defendant Dallas Police Officers Guab and Harris' shoes would know that the above alleged uses of force were clearly excessive when engaging with citizens such as Plaintiff Hayes, who was not threatening any officer or other person, was not suspected of committing any actual crime, was not attempting to flee, and was not resisting arrest.

74.      A reasonable Police Officer in Defendant Dallas Police Officers Guab and Harris' shoes would know that the level of force that they deployed during the above alleged events was clearly unreasonable and excessive.

75.      As a direct result of the force used against Plaintiff Hayes by Defendant Dallas Police Officers Guab and Harris, he suffered damages, physical injury, pain, and mental anguish.

76.      Defendant Dallas Police Officers Guab and Harris caused Plaintiff Hayes to suffer injuries, extreme pain and suffering by (1) kicking, punching, and tasing Plaintiff Hayes, (2) pinning Plaintiff Hayes with their knees on his skull, neck and back; (3) pulling Plaintiff Hayes' arm out of his shoulder socket.

P

77.     Plaintiff Hayes's injuries were not caused by any other means.

78.     As a result of Defendant Dallas Police Officers Guab and Harris'
deployment of excessive force, Plaintiff Hayes' constitutional and civil rights were
violated, and he has suffered damages, emotional distress, post-traumatic stress,
pain, suffering and permanent physical disfigurement.

**COUNT TWO: UNLAWFUL ARREST
VIOLATION OF THE FOURTH AMENDMENT PURSUANT TO 42
U.S.C. § 1983 AGAINST DEFENDANT DALLAS POLICE
OFFICERS GUAB AND HARRIS**

79.     Plaintiff repeats and re-alleges each and every allegation contained in the
above paragraphs as if fully repeated herein.

80.     No right is held more sacred, or is more carefully guarded, by the common
law, than the right of every individual to the possession and control of his own
person, free from all restraint or interference of others, unless by clear and
unquestionable authority of law. *Terry v. Ohio*, 392 U.S. 1, 9 (1968).

81.     Defendant Dallas Police Officers Guab and Harris deprived Plaintiff
Hayes of his constitutionally protected right to be free from unreasonable
seizures under the Fourth Amendment by falsely arresting him despite lacking
probable cause that any crime had been committed.

82.     There can be no doubt that the right not to be arrested absent probable
cause was clearly established at the time of Plaintiff Hayes's arrest. *Alexander
v. City of Round Rock*, 854 F.3d 298, 306–07 (5th Cir. 2017).

P

83.     To determine the presence or absence of probable cause, the totality of the circumstances surrounding the arrest must be considered.

84.     Defendant Dallas Police Officers Guab and Harris intentionally detained and arrested Plaintiff Hayes by placing him in handcuffs, without a warrant, without his consent, and without any legal justification.

85.     Plaintiff Hayes did not consent to his confinement and was conscious of it.

86.     Defendant Dallas Police Officers Guab and Harris willfully arrested Plaintiff Hayes by telling his that she was being arrested and by restraining Plaintiff Hayes in handcuffs and putting him in a Dallas Police vehicle.

87.     Plaintiff Hayes did not consent to being restrained in handcuffs or to being restrained in the Dallas Police Department vehicle.

88.     Defendant Dallas Police Officers Guab and Harris did not have probable cause to support arresting Plaintiff Hayes when they placed Plaintiff Hayes under arrest. *Turner*, 848 F.3d at 688; U.S. Const. Amend. 1.

89.     Additional factual support that Plaintiff Hayes was illegally arrested by Defendant Dallas Police Officers Guab and Harris is evidenced by the fact that the purported charges that they unlawfully used to arrest his on were ultimately dismissed by Defendant Dallas after the illegal arrest.

90.     Defendant Dallas Police Officers Guab and Harris did not have authority of law to arrest Plaintiff Hayes because they did not have a warrant or probable

P

cause to arrest him, and no other exigent circumstances existed that justified Plaintiff Hayes's arrest.

91.    By knowingly and intentionally arresting Plaintiff Hayes without consent, without probable cause, and without legal justification, Defendant Dallas Police Officers Guab and Harris deprived Plaintiff Hayes of his Fourth Amendment right to be free from unreasonable seizures.

92.    As a result of the illegal arrest, Defendant Dallas Police Officers Guab and Harris deprived Plaintiff Hayes of his civil, constitutional, and statutory rights and they are liable to Plaintiff Hayes under 42 U.S.C. § 1983.

93.    As a result of the illegal arrest, Plaintiff Hayes suffered damages and injuries.

94.    Plaintiff Hayes was damaged because of Defendant Dallas Police Officers Guab and Harris' wrongful acts and their deprivation of his liberty.

95.    Additionally, when making the illegal arrest, Defendant Dallas Police Officers Guab and Harris caused Plaintiff Hayes physical pain and suffering by (1) kicking, punching, and tasing Plaintiff Hayes, (2) pinning Plaintiff Hayes with their knees on his skull, neck and back; (3) pulling Plaintiff Hayes' arm out of his shoulder socket.

96.    As a result of Defendant Dallas Police Officers Guab and Harris' unlawful arrest, Plaintiff Hayes' constitutional and civil rights were violated, and he has suffered damages, emotional distress, post-traumatic stress, pain, suffering and

P

permanent physical disfigurement.

## COUNT THREE:  VIOLATION OF THE FOURTH AMENDMENT PURSUANT TO 42 U.S.C. § 1983 AGAINST DEFENDANT CITY OF DALLAS

97.     Plaintiff Hayes repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

98.     In order to state a claim against a municipality under 42 U.S.C. §1983, a plaintiff must which identify: (1) a policymaker; (2) an official policy or custom; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski*, 237 F.3d at 578; *See also*, *Meadow briar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 533 (5th Cir. 1996) (citing *Palmer v. City of San Antonio*, 810 F.2d 514, 516 (5th Cir. 1987) (the Fifth Circuit requires a plaintiff plead "***facts*** which show that: (1) a policy or custom existed; (2) the governmental policymakers actually or constructively knew of its existence; (3) a constitutional violation occurred; and (4) the custom or policy served as the moving force behind the violation.") "[T]he 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Hunter v. City of Houston,* 564 F.Supp.3d 517, 529 (S.D. Tex. 2021), *quoting Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 364-65 (5th Cir. 2020).

P

99.     The City of Dallas is liable for all damages suffered by the Plaintiffs pursuant to *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978) and 42 U.S.C. § 1983, based on an official policy or custom of the Defendant Dallas, Defendant Dallas' Police Department, and Defendant Dallas' Policy Makers all had actual or constructive knowledge that was a moving force behind the constitutional violations alleged herein. Specifically, Defendant Dallas' Police Department's policy concerning the use of force allows police officers to deploy excessive force even when there is not any perceived threat posed by a suspect and/or detainee — and the police officers' belief that there is a threat posed is unreasonable.

100.    Defendant Dallas Officers Guab and Harris were acting under color of law and acting pursuant to customs, practices and policies of Defendant Dallas, Defendant Dallas' Police Department and Defendant Dallas' Policy Makers in regard to the use of excessive force as authorized and/or ratified by the Defendant Dallas' Policy Makers. Plaintiff Hayes was deprived of rights and privileges secured to him by the United States Constitution and by other laws of the United States, by the Defendant Dallas failing to provide proper training, adequate supervision, or discipline in dealing with individuals such as Plaintiff Hayes in violation of 42 U.S.C. § 1983 and related provisions of federal law and in violation of the above cited constitutional provisions.

P

101.    With respect to the claims made the basis of this lawsuit, Defendant Dallas failed to adequately train its officers on how to deal with individuals, specifically:

(1) To verify a suspect's identity and/or complete a check of a suspect's (such as Plaintiff Hayes) driver's license through the Dallas Police Department's database that was accessible from the computer in her Dallas Police vehicle before proceeding to detain that suspect

(2) To provide adequate training to Defendant Officers Guab and Harris on proper arrest and confrontation techniques and the subsequent use of excessive force as described above.

102.    The failure to train its officers in a relevant respect reflects a deliberate indifference by Defendant Dallas and Defendant Dallas' Policy Makers to the rights of the City's inhabitants and is actionable under 42 U.S.C. § 1983.

103.    Defendant Dallas, Defendant Dallas' Police Department and Defendant Dallas' Policy Makers have an inadequate policy of training officers regarding the following areas of law enforcement:

a.  The use of proper and appropriate detention and seizure procedures.

b.  The use of excessive and/or deadly force.

c.  The proper use of less violent means.

d.  The proper use of cover and the pursuit of a suspect.

P

e.  De-escalation tactics

104.     Defendant Dallas has longstanding records of not providing Dallas Police Department officers with adequate training on de-escalation techniques intended to prevent instances of excessive and deadly force and even extrajudicial killings by Dallas Police officers

105.     The actual practice or custom of the Defendant Dallas' Police Department regarding the use of excessive and/or deadly force is to "shoot first and ask questions later."

106.     As a result of the lack of training and the official custom or policies of the Defendant Dallas' Police Department, there have been a number of incidences of using excessive force in the beating and/or shooting of unarmed minorities. On or about July 24, 2012, unarmed James Harper ("Harper") was fatally shot by DPD officer Brian Rowden ("Rowden"). Rowden pursued Harper on foot and fired a shot at Harper as he ran away. Rowden was not disciplined for the unlawful killing of Harper. On or about March 10, 2013, unarmed Clinton Allen ("Allen") was fatally shot 7 times by Defendant Dallas' Police Department officer Clark Staller. Allen was wrongfully gunned down although he held both hands up. Clark Staller, despite previously falsifying a police report prior to the shooting death of Allen, was allowed to remain on as an officer and was not disciplined for the death of Allen. Clark Staller was allowed to prepare his

P

statement of the incident with the assistance of his attorney and was not asked any questions to determine the veracity of his statements. On or about October 14, 2013, a Defendant Dallas' Police Department officer shot Bobby Bennett ("Bennett"), an unarmed individual, and attempted to falsify a police report but a video exposed the attempted cover-up.  David Blair, an unarmed individual was standing outside of his east Oak Cliff apartment on October 2, 2013, when a pair of Dallas Police Officers harassed him for no lawful reason.  The officers approached him, followed him to his apartment and shot at him 14 times as he stepped out of his apartment for no lawful reason.  Blair's story surfaced just a week after a video circulated of a Dallas police officer shooting Bennett, a man with mental challenges, after he stood up from a chair he set in the middle of a cul-de-sac. Police initially claimed the man lunged at them, but the video showed otherwise. An aggravated assault charge against the wounded man has since been dropped. On December 10, 2013, 19-year-old Kelvion Walker was still in the vehicle with his hands up when a Dallas police officer shot him. On August 27, 2015, an unarmed Bertrand Syjuan Davis was fatally shot by Officer Matthew Terry. According to multiple witness accounts, immediately upon arriving at the scene, Officer Terry failed to conduct an objectively reasonable assessment of the facts, drew his gun, and shot Bert several times including once in the back, without any verbal warning. Per witnesses, Officer Terry was not facing or reacting to an imminent threat of death or serious bodily injury to him or any other person at the

P

time he fired multiple shots that struck Bert, including one to the back. Officer Terry was not disciplined by the Defendant Dallas' Police Department for his wrongful conduct. On January 18, 2017, Officers Christopher Hess and Jason Kimpel used excessive and deadly force resulting in the death of 21-year-old Genevive Dawes and the injuries to Virgilio Rosales. As Dawes drove in her vehicle in reverse at a very slow rate of speed, Hess and Kimpel fired at least 13 shots through the passenger side window where Rosales was seated, striking Dawes five times in the neck, her right triceps, left arm, upper left chest, and right forearm. Dawes's right earlobe was also partially amputated. Dawes was transported to Baylor Hospital where she later died as a result of her injuries. Hess's defense for firing at the moving vehicle was not supported by body cam evidence. Despite body cam footage that shows Dawes was not trying to injure anyone as she reversed her vehicle, Hess and Kimpel were not terminated for their violation of Defendant Dallas' policy. In fact, Defendant Dallas' Police Department attempted to cover-up this shooting until the body cam footage was released to the Dallas District Attorney's office almost six months later. Hess was indicted for the death of Dawes.

107.     The above incidents evidence there exists a persistent, widespread practice by Dallas Police Officers to use excessive force and shoot suspects and/or detainees that result from the training or lack thereof, received by Dallas Police Officers. Upon information and belief, these Dallas Police Officers,

P

including Defendant Police Officers Guab and Harris, were trained by individuals with little or no experience working in the field.

108.     Defendant Police Officers Guab and Harris were acting under the color of law and acting pursuant to customs, practices and policies of the Defendant Dallas, Defendant Dallas' Police Department and Defendant Dallas' Policy Makers in regard to the use of excessive force as authorized and/or ratified by the Defendant Dallas' Policy Makers. Plaintiff Hayes was deprived of rights and privileges secured to him by the United States Constitution and by other laws of the United States, by Defendant Dallas failing to provide proper training, adequate supervision, or discipline in dealing with individuals such as Plaintiff Hayes in violation of 42 U.S.C. §1983 and related provisions of federal law and in violation of the above cited constitutional provisions.

109.     Defendant Dallas' policy of inadequate and improper training of police officers on proper detention and seizure procedures and the use of excessive and/or deadly force, resulted in the constitutional deprivations and damages alleged herein.

110.     As a direct cause and result of the constitutional violations as set forth herein, Plaintiff Hayes's constitutional and civil rights were violated, and he has suffered damages, emotional distress, post-traumatic stress, pain, suffering and permanent physical disfigurement, and permanent physical disability. Further Plaintiff Hayes incurred extreme pain, injuries and substantial economic damages

P

for which Plaintiff Hayes seeks compensation, as set forth more specifically in the section of this Complaint entitled "Damages."

## V.    DAMAGES

111.    Plaintiff Hayes repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

112.    Plaintiff Hayes's injuries were a foreseeable event.

113.    Plaintiff Hayes's injuries were directly and proximately caused by the Defendants' violation of his constitutional and civil rights.

114.    As a result, Plaintiff Hayes is entitled to recover all actual damages allowed by law.

115.    Plaintiff Hayes contends that each of the Dallas County Defendants' conduct constitutes malice, evil intent, or reckless or callous indifference to Plaintiff Hayes's federally protected rights. Thus, Plaintiff Hayes is entitled to punitive damages against the Defendants.

116.    As a direct and proximate result of the occurrence which made the basis of this lawsuit, Plaintiff Hayes was forced to suffer:

    a.  Emotional distress, torment, and mental anguish;

    b.  Physical injuries;

    c.  Physical pain and suffering;

P

d.  Permanent physical disfigurement;

e.  Permanent physical disability;

f.  Economic damages, and

g.  Deprivations of his liberty.

117.   Pursuant to 42 U.S.C. §1983, Plaintiff Hayes seeks to recover, and hereby requests the award of damages, punitive damages, reasonable attorney's fees, and costs of court.

## VI.   ATTORNEY'S FEES

118.   Plaintiff Hayes prevails in this action, by settlement or otherwise, Plaintiff Hayes is entitled to and hereby demands attorney's fees under 42 U.S.C. § 1988.

## VII. JURY DEMAND

119.   Plaintiff Hayes respectfully requests a jury trial.

## VIII.  PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff Hayes prays that judgment be rendered against the Defendants, for an amount in excess of the jurisdictional minimum of this Court. Plaintiff Hayes further prays for all other relief, both legal and equitable, to which he may show himself justly entitled.

# IX. CERITIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information and belief that this Complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule

Respectfully submitted,

**Robinius, Espinosa & Wietzel, LLC**

By: _____

**Mark Robinius**
**Texas State Bar No. 24025865**
**6060 North Central Expressway**
**Suite 212**
**Dallas, Texas 75206**
**Phone: (972) 487-3785**
**Fax: (972) 205-9421**
**RSHlawfirmllp@gmail.com**
**www.REWLAWGROUP.com**
**ATTORNEY FOR THE PLAINTIFF**
**SILVESTER HAYES**

## CERTIFICATE OF SERVICE

I do hereby certify that on October 15, 2023, a true and correct copy of the foregoing Original Petition has been served on all parties of record via the eFile system and Citation has been requested from the Clerk which will be served on all parties.

_____

**Mark Robinius**
