## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **SILVESTER HAYES,** | § | |
| | § | **Civil Action No.  3:23cv2271-S** |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | |
| | § | |
| **CITY OF DALLAS, DALLAS** | § | **JURY TRIAL DEMANDED** |
| **POLICE OFFICER HOLLY** | § | |
| **HUBBS, DALLAS POLICE** | § | |
| **OFFICER WALTER PAUL** | § | |
| **GUAB, DALLAS POLICE** | § | |
| **OFFICERS DOES 1 THROUGH** | § | |
| **10** | § | |
| | § | |
| **Defendants.** | § | |

### PLAINTIFF SILVESTER HAYES' FIRST AMENDED COMPLAINT

**TO THE HONORABLE DISTRICT COURT JUDGE:**

**COMES NOW, PLAINTIFF SILVESTER HAYES** and, pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), files this, his First Amended Complaint and Jury Demand, against **DEFENDANT CITY OF DALLAS, TEXAS, DALLAS POLICE OFFICER HOLLY HUBBS, DALLAS POLICE OFFICER WALTER PAUL GUAB and DALLAS POLICE OFFICERS DOES 1 THROUGH 10** for violations of his Constitutional and Civil Rights under 42 U.S.C. 1983 and the Fourth and Fourteenth Amendment to the United States Constitution and in support thereof would respectfully shows as follows:

## I.     NATURE OF THE ACTION

1.      This is an action brought by the Plaintiff Silvester Hayes ("Plaintiff Hayes") against The City of Dallas, Texas and Dallas Police Officers Walter Paul Guab and Holly Hobbs and Dallas Police Officers DOES 1 through 10 for their use of excessive force against Plaintiff Hayes and the unlawful arrest of Plaintiff Hayes under the color of law, in violation of his individual rights under the Fourth Amendment of the United States Constitution and, consequently, in violation of his civil rights pursuant to 42 U.S.C. § 1983.

## II.     THE PARTIES

2. Plaintiff Hayes is an individual who resides in Dallas, Dallas County, Texas and may be served through his undersigned counsel of record.

3.  Defendant City of Dallas (hereinafter referred to as "Defendant Dallas" or collectively referred to as "Defendants") is and was at all times relevant herein a municipal entity created and authorized under the law of the State of Texas to maintain a Police Department which acts as its agent in the area of law enforcement. Defendant Dallas funds and operates the Dallas Police Department, which, along with the Dallas City Council, Dallas City Manager's office and Chief Garcia, are responsible for the implementation of the Dallas Police Department's budget, policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit. The Dallas Police

Department is also responsible for preventive, investigative, and enforcement services for all citizens of the City of Dallas. All actions that form the basis of this lawsuit were performed pursuant to policies and procedures, customs, and practices of Defendant Dallas. Dallas may be served with process by and through its City Attorney located at 1500 Marilla Street, Room 7DN, Dallas, Texas 75201.

4.      Defendant Dallas Police Officer Holly Hubbs (hereinafter referred to as "Officer Hobbs" or collectively as the "Defendants") is an individual who at all times material herein, was a police officer allegedly acting in the course and scope of her employment for the City of Dallas' Police Department.  At all times relevant to this lawsuit, it was Officer Hubbs' duty and responsibility to treat all persons in compliance with constitutional and statutory requirements and in compliance with the City of Dallas' Police Department's rules, regulations, policies and procedures, customs and/or practices relating to the use of excessive and/or deadly force. Defendant Officer Hubbs may be served at the Dallas Police Department headquarters located at 1400 Botham Jean Blvd., Dallas, TX 75215 or wherever she may be found. Defendant Officer Hubbs is being sued in her official and individual capacity.

5.      Defendant Dallas Police Walter Paul Guab (hereinafter referred to as "Officer Guab" or collectively as the "Defendants") is an individual who at all times material herein, was a police officer allegedly acting in the course and

scope of her employment for the City of Dallas' Police Department..  At all times relevant to this lawsuit, it was Officer Guab's duty and responsibility to treat all persons in compliance with constitutional and statutory requirements and in compliance with the City of Dallas' Police Department's rules, regulations, policies and procedures, customs and/or practices relating to the use of excessive and/or deadly force. Defendant Officer Guab may be served at the Dallas Police Department headquarters located at 1400 Botham Jean Blvd., Dallas, TX 75215 or wherever she may be found. Defendant Officer Guab is being sued in his official and individual capacity.

6.      Plaintiff Hayes is unaware of the true names and capacities of those Defendant Police Officers sued herein as Defendants DOES 1  through 10, and therefore, Plaintiff Hays sues said Defendants by the fictitious name Dallas Police Officers DOES 1  through 10. Plaintiff Hayes is informed and believes, and thereupon alleges, that each of the Defendants designated herein as a DOE, was and is legally, equitably, or in some other actionable manner, responsible for the events and happenings herein referred to, and thereby negligently, carelessly, with deliberate indifference, or by reason of direct or imputed negligence or breach of duty arising out of the matters herein alleged, legally and proximately caused the hereinafter alleged injuries and damages to the Plaintiff Hayes. Plaintiff Hayes will hereafter seek leave to amend this

Complaint to set forth the true names and identities of the unknown named Dallas Police Officers DOES 1 through 10 when they are ascertained.

7. Plaintiff Hayes alleges that Dallas Chief of Police Edgardo Garcia ("Chief Garcia"), chief policymaker for the Dallas Police Department, with the authority for setting policies, including training of the Dallas Police Officers, and the Dallas City Council and the Dallas City Manager, vested with all powers of the City and the determination of all matters of policy ("Defendant Dallas' Policy Makers"), had a duty, but failed to implement and enforce such policies, practices and procedures for the Dallas Police Department that respected Plaintiff Hayes' constitutional rights.

8. Plaintiff Hayes is informed and believes and thereupon alleges that, at all times mentioned herein, that Defendant Officers Hobbs and Guab's as well as Defendant Dallas Police Officers DOES 1 through 10's pattern of conduct towards the Plaintiff Hayes was in accord with the defacto policy and/or custom that emanated from the Defendant Dallas' policymakers.

9.     Defendant Dallas' Policy Makers' failure to implement the necessary policies and the (de facto) implementation of unconstitutional policies, caused Plaintiff Hayes to experience an unwarranted and excruciating physical and mental anguish, Moreover, Dallas' Policy Makers' failure to implement the necessary policies and the (de facto) implementation of unconstitutional policies,

caused Plaintiff Hayes to suffer economic damages. For these civil rights violations and other causes of action discussed herein, Plaintiff Hayes seeks answers and compensation for his respective damages.

10. Plaintiff is informed, believes, and thereupon alleges that the Dallas Defendants were responsible for the events and happenings herein set forth and proximately caused injury and damages to Plaintiff Hayes as herein alleged and are jointly and severally responsible for Plaintiff Hayes's damages.

### III.   JURISDICTION

11. This Court has Jurisdiction over the subject matter and parties pursuant to U.S.C. § 1331 and § 1343 because Plaintiff Hayes is suing for relief under 42 U.S.C. §1983 and because this case involves questions of federal law.

12. This Court also has jurisdiction pursuant to 28 U.S.C. § 1343 and because the Plaintiff Hayes seeks damages for violation of his Constitutional and Civil rights. Specifically, this Court has jurisdiction because this action is being brought by the Plaintiff Hayes to recover damages caused by violations of his Constitutional and Civil Rights under 42 U.S.C. § 1983, and the Fourth, and Fourteenth Amendments to the United States Constitution.

13. Defendants are subject to personal jurisdiction of this Court because the Dallas County Defendants reside in, maintain facilities and business operations in this District, and all or most of the events giving rise to this action occurred in this

District. This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. **§** 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution.

14. Plaintiff Hayes's state law claims share all common operative facts with his federal law claims and the parties are identical Resolving the Plaintiff Hayes's federal and state law claims in a single action serves the interests of judicial economy, convenience, and fairness to the parties.

## IV.  THE FACTS

15. Like many other young black men and women residing in the Dallas community of South Oak Cliff, Plaintiff Hayes fears for his life every time that a Dallas Police Department cruiser is following his vehicle. He is terrified that one small mistake or misperception – by either the Police officer or himself – can cause him to lose his life and leave his children without a father.

16. Despite these fears, Plaintiff Hayes has lived his life as a law-abiding citizen and, prior to this incident, he had dreams of being a Dallas Police Officer.

17. Unfortunately, this incident exemplifies that there is good reason for young black men to live in fear of interacting with the Dallas Police Department and Plaintiff Hayes' intent in bringing this lawsuit is to ensure that this type of constitutionally defying conduct ends today.

18. Plaintiff Hayes is a 27-year-old single father who worked as a security guard. In fact, prior to this incident, had never been arrested in his life. However, on

October 16, 2021, Plaintiff Hayes, and the lives of his children, were fundamentally altered forever.

19. On that October morning, Plaintiff Hayes woke up early and went out to buy breakfast for his four young children.

20. As Plaintiff Hayes was innocently driving to buy his children's favorite breakfast meal of French toast and bacon at a restaurant that was located only a few blocks away from his residence, Defendant Officers Guab and Hubbs racially profiled Plaintiff Hayes and as they were following Plaintiff Hayes, they decided to run a registration check on his vehicle.

21. Defendant Officer Hubbs' registration check indicated that Plaintiff Hayes' vehicle was registered to an individual named "*Sylvester* Hayes." Defendant Officer Hubbs then cross-checked the name "*Sylvester* Hayes" in the Adult Information System ("AIS") law enforcement database, which revealed an active felony arrest warrant for family violence (hereinafter referred to as "family violence warrant."

22. Unfortunately, Defendant Officers Hubbs and Guab did not bother to check the fact that Plaintiff Hayes' name is spelled "*Silvester* Hayes" and not "*Sylvester* Hayes. Doing so would have prevented the horrific events that give rise to this lawsuit.

23. In a mixed case of mistaken identity and racial profiling, Defendant Officers Hubbs and Guab continued following Plaintiff Hayes' vehicle looking for a

pretext to stop him. When Plaintiff Hayes failed to indicate before turning left in an intersection, Defendant Officers Hubbs and Guab found the pretext that they were looking for and stopped Plaintiff Hayes' vehicle.

24. With Plaintiff Hayes stopped, without probable cause, Defendant Officers Hubbs and Guab embarked on their misguided criminal investigation of the erroneous family violence warrant.

25. Officer Guab approached the driver side window of Plaintiff Hayes' vehicle. When Plaintiff Hayes calmly asked why he was pulled over and explained that he was only out to get breakfast for his children, Defendant Officer Guab told Plaintiff Hayes the reason for the traffic stop. Although Defendant Officer Guab's explanation was suspicious and sounded obviously manufactured, Plaintiff Hayes did not argue with the officer and handed him his driver's license.

26. As he was compliantly handing Defendant Officer Guab his driver's license, Plaintiff Hayes disclosed to Defendant Officer Guab that he had a handgun in the vehicle and that the gun was lawfully registered in his name.

27.  Defendant Officer Guab walked to the rear of Plaintiff Hayes' vehicle and handed Plaintiff Hayes' driver's license to Defendant Officer Hubbs and informed her of Plaintiff Hayes' name without verifying that the spelling of his name was not the "*Sylvester* Hayes" that was the subject of the family violence warrant.

28.  Rather than return to her Dallas Police Department cruiser to use its computer to run a check on Plaintiff Hayes' driver's license through the Dallas Police Department's database, without probable cause, Defendant Officer Hubbs erroneously informed Defendant Officer Guab that Plaintiff Hayes was the same "*Sylvester* Hayes" that was wanted for a family violence warrant.

29.Because a simple check would have told them that Plaintiff Hayes' name had a different spelling and that he was not the "Sylvester Hayes" that they thought he was, there was not probable cause for Defendant Officers Hubbs and Guab to believe that Plaintiff Hayes had a family violence warrant. Therefore, the tragic events that followed are the product of an illegal seizure that resulted in the violation of Plaintiff Hayes' civil and constitutional rights in violation of the Fourth Amendment.

30.  Without verifying the erroneous information that was provided to him by Defendant Officer Hubbs, Defendant Officer Guab marched back to Plaintiff

P

Hayes' driver's side window and without explanation proceeded to reach inside Plaintiff Hayes' vehicle to open the driver's side door and seize Plaintiff Hayes.

31. Because Defendant Officer Guab returned to Plaintiff Hayes' vehicle, reached into his driver's side window, and opened his door without running and verifying Plaintiff Hayes' driver's license in the City of Dallas Police Department's database, Defendant Officers Guab and Hubbs turned what would have been a routine traffic stop into an illegal seizure that violated Plaintiff Hayes' Fourth Amendment rights.

32. After opening the vehicle's door, without probable cause, Defendant Officer Guab and Hubbs then forcibly seized and removed Plaintiff Hayes from his vehicle.

33. Alarmed by this sudden escalation in aggression by Defendant Officer Guab, Plaintiff Hayes repeatedly demanded to know what was going on. Instead of providing Plaintiff Hayes with an explanation for forcibly seizing him from his vehicle, Defendant Officers Guab and Hubbs escalated their use of force against Plaintiff Hayes.

34. As Defendant Officers Guab and Hubbs were manhandling Plaintiff Hayes, several Dallas Police Officers identified herein as Defendant Dallas Police Officers DOES 1 through 10 pulled up to the scene in several unmarked vehicles and Dallas Police Cruisers.

P

35. In their rush to join the fight, Defendant Dallas Police Officer DOES 1 Through 10 did not consult with Defendant Officers Guab and Hubbs and did not bother to ascertain that the now visible gun in Plaintiff Hayes' vehicle was fully disclosed to Defendant Officer Guab and Hubbs, was in fact a lawfully registered weapon and did not pose a threat to anyone at the scene of the incident.

36. Based on the fact that Plaintiff Hayes' vehicle was fully disclosed to Defendant Officer Guab and Hubbs, was in fact a lawfully registered weapon and did not pose a threat to anyone at the scene of the incident, Defendant Police Officers DOES 1 through 10 did not have an objective reason to believe that the gun posed a risk their safety and the presence of Plaintiff Hayes' gun was not justification for the use of excessive force.

37. However, it was no surprise that the Officers erroneously presumed that a young black man with a gun was posed a threat and one or more of the Defendant Dallas Police Officers DOES 1 through 10 frantically started yelling "Gun!"

38. In a proverbial case of gasoline being poured on a fire, having multiple Dallas Police Officers yelling "Gun" only escalated the Officers' use of excessive force on Plaintiff Hayes.

39. In a blur of excessive force, all of which was documented by Defendant Officers Guab and Hubbs as well as the Defendant Dallas Police Officers DOES

P

1  through 10's body cams, the Officers began to kick, punch, and unnecessarily use their tasers on Plaintiff Hayes.

40. One or more of the Officers can be seen dangerously pressing with his shin on the back of Plaintiff Hayes' neck and applying downward force pinning Plaintiff Hayes' skull, neck and back to the concrete.

41. The Officers proceed to press on Plaintiff Hayes' neck even though the same law enforcement restraint technique has resulted in the death of detainees in cities across the United States – the most glaring examples being the tragic deaths of George Floyd and Tony Timpa – and is apparently the same "lateral vascular neck restraint" that the Defendant City of Dallas has represented that it disfavors but, based on their failure to discipline any of the Defendant Officers in this case, does not forbid and in fact can be said to defacto endorse.[1]

42. As the melee escalated, one of the Officers at the scene pulled Plaintiff Hayes' arm out of his shoulder socket which has caused him on-going pain and mobility issues to this day.

43. Mindful of the fact that too many young black men have lost their lives in similar excessive use of force incidents, Plaintiff Hayes resorted to begging for his life and pleading for help from bystanders and witnesses.

---

[1] *Timpa*, *v*. *Dillard*, 20-10876, 2021 WL 5915553 (5th Cir. Dec. 15, 2021); *See also* https://www.dallasnews.com/news/2020/06/05/dallas-police-department-announces-new-policies-after-seven-days-of-protests/

P

44. The Defendant Officers Guab and Hubbs as well as the Defendant Dallas Police Officers DOES 1 through 10 ignored his pleas and only seemed to ramp up their use of violence whenever he cried out for help.

45. Finally, the Officers hog tied Plaintiff Hayes' feet and they violently placed him in the back of one of a Dallas Police Department cruiser.

46. Thereafter, one or more of the Officers can be heard justifying their violence by falsely accusing Plaintiff Hayes of being a felon that they were going to send to the feds and erroneously stating that there must be something "to get him on."

47. With Defendant Officer Guab as well as the Defendant Dallas Police Officers DOES 1 through 10 surrounding her Dallas Police Department cruiser excitedly hoping that Defendant Officer Hubbs would find something to arrest Plaintiff Hayes for, Defendant Officer Hubbs finally checked Plaintiff Hayes' driver's license through the Dallas Police Department's database.

48. To Defendant Officer Hubbs' apparent shock, the Dallas Police Department's database informed her that Plaintiff Hayes was not the same person that she thought had a family violent warrant and she can be heard on the body cam footage exclaiming "Fuck, we got the wrong guy."

49. Defendant Officer Hubbs' dismay and realization that a serious mistake had been made only heightened when her database check further informed her that Plaintiff Hayes had never been arrested in his life and that the gun in his possession was indeed his and was lawfully registered in his name.

P

50. Defendant Officer Guab, Defendant Officer Hubbs and the Defendant Dallas Police Officers DOES 1 THROUGH 10 use and escalation of force was the result of their failure to take basic steps to confirm Plaintiff Hayes' identity and therefore confirm that there was probable cause to seize Plaintiff Hayes in the first place and their collective failure resulted in the tragic violation of Plaintiff Hayes' civil and constitutional rights.

51. After the assault, the Dallas Police Department Sargent in charge of Defendant Officers Guab and Hubbs as well as the Defendant Dallas Police Officers DOES 1 through 10, informed Plaintiff Hayes of the case of mistaken identity and apologized for "his team roughing him up." In effect, the Dallas Police Department Sargent was confirming that there was not probable cause to seize Plaintiff Hayes due to the fact that his Defendant Officers' failure to take basic steps to confirm his identity and that the subsequent use of force to arrest him was excessive.

52. Armed with the knowledge that Defendant Officers Guab and Hubbs had seized Plaintiff Hayes without probable cause and then used excessive force to arrest him, it would be expected that the Dallas Police Department Sargent would then discipline his Officers for their conduct in violating Plaintiff Hayes' civil and constitutional rights.

53. However, rather than discipline Defendant Officers Guab and Hubbs, the Dallas Police Sargent consulted with the Officers and listened while they made several

P

false statements regarding Plaintiff Hayes and the events surrounding his detention. Based on Defendant Officer Guab and Hubbs' misrepresentations and false representations, the Dallas Police Department Sargent encouraged Defendant Officers Guab and Hubbs to unlawfully arrest Plaintiff Hayes for Resisting Arrest and Unlawful Possession of a Weapon.

54. The Dallas Police Department Sargent's failure to discipline Defendant Officer Guab and Hubbs is confirmation that the Officers were following the defacto policy or custom of the Defendant Dallas in the violation of Defendant Hayes' civil and constitutional rights and therefore the Dallas Police Department Sargent saw no reason to discipline them.

55.  As a result of Defendant Officers Guab and Hubbs' unlawful arrest, Plaintiff Hayes was arrested and held in jail for multiple days. Because Plaintiff was a security guard and his employer did not tolerate his being absent from his job for any reason, Plaintiff Hayes was terminated from his security guard job.

56. Plaintiff Hayes' termination from his job as a security guard started a downward spiral that would continue wreak havoc on his life for the next fourteen months. The false charges that Plaintiff Hayes was unlawfully arrested for and charged with caused him to be unemployable as a security guard. As a result, he lost his home and he suddenly found himself unable to provide a home for his four young children.

P

57. Defendant Officers Guab and Hubbs' violation of Plaintiff Hayes' constitutional and civil rights was the moving force that caused him to suffer injuries, economic injuries, emotional distress, and post-traumatic stress syndrome.

58. After approximately 14 months of malicious and false prosecution, on December 9, 2022, Defendant Dallas finally acknowledged their mistakes and dismissed the false charges against Plaintiff Hayes.

59. Defendant Officers Guab and Hubbs as well as the Dallas Police Officer DOES 1 through 10's deployed excessive force against Plaintiff Hayes as a result of the fact that they were following Defendant Dallas' policy or custom of deploying excessive force against a detainee.

60. Defendant Dallas' Police Department's written policy on use of force is not the defacto policy or custom of the Dallas Police Department. Defendant Officers Guab and Hubbs as well as the Dallas Police Officer DOES 1 through 10's were following the Defendant Dallas' defacto policy or custom when employed when they seized Plaintiff Hayes without probable cause from his vehicle and then commenced with (1) kicking, punching, and tasing Plaintiff Hayes, (2) pinning Plaintiff Hayes with their shins on his skull, neck and back; and (3) pulling Plaintiff Hayes' arm out of his shoulder socket without warning and or any attempt to de-escalate.

P

61. Defendant Dallas' Police Department has a pattern, practice, history, and custom of using excessive force against minorities, racial profiling, detaining on false pretenses, and approaching them with guns drawn, when there is no imminent threat of bodily harm or other justifiable reason to do so. Defendant Dallas' Police Department trains its officers to use excessive force even when there exists no immediate threat to themselves or others.

62. Defendant Dallas' Police Department did not provide adequate training to Defendant Officers Guab and Hubbs as it relates to the use of excessive force and the use of non-excessive force.

63. Defendant Dallas' Police Department did not provide adequate training to Defendant Officer Hubbs to verify a innocent person's identity and/or complete a check of a innocent person's (such as Plaintiff Hayes) driver's license through the Dallas Police Department's database before proceeding to seize, detain or arrest that innocent person.

64. If the Defendant Dallas' Police Department had provided training to Defendant Officer Hubbs to verify a innocent person's identity and/or complete a check of a innocent person's (such as Plaintiff Hayes) driver's license through the Dallas Police Department's database, then this entire incident would have been avoided. At minimum, if such training had been provided, Defendant Officer Guab and Hubbs as well as the Dallas Police Officers DOES 1 through 10 would have realized that they had the wrong "*Sylvester* Hayes" or, alternatively, if the

P

Dallas Police Officers had informed Plaintiff Hayes of the reason why they were seizing him, he could have informed them that he not the same "*Sylvester Hayes*" that was wanted for a family violence warrant.

65. As such, it is clear that Defendant Dallas' Police Department did not provide adequate training to Defendant Officers Guab and Hubbs on proper identity verification before they seized, detained, or arrested an innocent person.

66. Defendant Dallas' Police Department did not provide adequate training to Defendant Officers Guab and Hubbs on appropriate methods and techniques to control situations similar to the one encountered by them on October 16, 2021.

67. Defendant Dallas' Policy Makers knew or should have known that the training provided to Defendant Officers Guab and Hubbs was inadequate or nonexistent.

68. Defendant Officers Guab and Hubbs should have been well-trained to deal with unarmed citizens posing no threat of imminent bodily harm to them, other officers, or the general public. Defendant Officers Guab and Hubbs should have been well-trained to verify an innocent person's identity and/or complete a check of an innocent person's (such as Plaintiff Hayes) driver's license through the Dallas Police Department's database before proceeding to seize, detain or arrest that innocent person and/or before confronting that innocent person.

69. Defendant Officers Guab and Hubbs opened Plaintiff Hayes' vehicle's door and immediately pushed him to the ground without an evaluation of what

P

occurred or what was transpiring.  They simply deployed excessive force without having any knowledge of the true situation or Plaintiff Hayes' true identity.  Essentially, Defendant Officers Guab and Hubbs were ill-trained, and as a result, defaulted to the defective Defendant Dallas' Police Department's defacto policy: to use excessive force even when there existed no immediate threat of harm to themselves or others.

70. There existed no justification whatsoever for Defendant Officers Guab and Hubbs use of excessive force. Plaintiff Hayes was in his vehicle and was not committing a offense. Plaintiff Hayes was totally unaware of what was transpiring when Defendant Officers Guab and Hubbs deployed excessive force. Plaintiff Hayes was not attempting to harm anyone, nor did he appear menacing, threatening, or dangerous in any manner.

71. To be clear, the only reason that Defendant Officer Guab reached into Plaintiff Hayes' vehicle, opened the vehicle's door and then he and Defendant Officer Hubbs proceeded to forcibly remove Plaintiff Hayes from his vehicle, was because they erroneously believed he was someone else. In so doing, Defendant Officers Guab and  Hubbs did not have an objectively reasonable basis for seizing and then using excessive force on Plaintiff Hayes.

72. There is no credible evidence whatsoever that Defendant Officers Guab and Hubbs or anyone else was in imminent danger that would indicate that the use of excessive force was justified.

P

73. Defendant Dallas' Police Department failure to discipline Defendant Officers Guab and Hubbs, as well as Dallas Police Officers DOES 1 through 10, for seizing Plaintiff Hayes without probable cause, failing to verify Plaintiff Hayes' identity before seizing him and then using excessive force to effect his arrest evidences that Defendant Officers Guab and Hubbs' conduct in violating Plaintiff Hayes' civil and constitutional rights was consistent and in compliance with the Defendant Dallas Police Departments' defacto policy or custom permitting such conduct.

74. Defendant Officers Guab and Hubbs' unlawful and unwarranted acts, lack of training, lack of discipline and the defacto customs or policies of the Defendant Dallas' Police Department were the proximate cause of Plaintiff Hayes' damages and injuries.

75. At all times material hereto, Defendant Officers Guab and Hubbs were acting in the scope of their employment as agent, servant and employee of Defendant Dallas' Police Department, a part of Defendant Dallas, within its executive branch and were performing a governmental function.

76. Moreover, no reasonably competent officer would have concluded that Defendant Officers Guab and Hubbs' actions described herein would not, and did not, violate Plaintiff Hayes' constitutional rights. In other words, no reasonably prudent police officer under similar circumstances could have believed that Defendant Officers Guab and Hubbs' conduct was justified.

P

## V.    CAUSES OF ACTION
### COUNT ONE – EXCESSIVE FORCE:
### VIOLATION OF THE FOURTEENTH AMENDMENT
### PURSUANT TO 42 U.S.C. § 1983 AGAINST DEFENDANT
### DALLAS POLICE OFFICERS GUAB AND HUBBS

77.      Plaintiff Hayes repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

78.      Acting under the color of law, Defendant Dallas Police Officers Guab and Hubbs deprived Plaintiff Hayes of the rights and privileges secured to him by the Fourteenth Amendment to the United States Constitution and by other laws of the United States to be free from illegal and unreasonable seizures by the use of excessive force.

79.      The amount of force used by Defendant Dallas Police Officers Guab and Hubbs against Plaintiff Hayes as alleged in the above events was objectively unreasonable under the circumstances and inflicted unnecessary injury, pain, and suffering upon Plaintiff Hayes.

80.      A seizure is unreasonable if it results in (a) an injury, (b) that resulted directly and only from a use of force that was clearly excessive, and (c) the excessiveness was clearly unreasonable.

81.  Although officers may need to use "physical force ... to effectuate [a] innocent person's compliance" when she refuses to comply with commands during a traffic stop, the officers still must assess "the relationship between the need

P

23

and the amount of force used." *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012); quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009).

82.  Where an individual's conduct amounts to mere "passive resistance," use of force is not justified. *Trammell v. Fruge*, 868 F.3d 332, 341 (5th Cir. 2017).

83. A constitutional violation occurs when an officer sprays, tases, strikes, or violently slams an arrestee who is not actively resisting arrest. *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 731 (5th Cir.), *cert. denied sub nom. City of Fort Worth, Tex. v. Darden*, 139 S. Ct. 69, 202 L. Ed. 2d 23 (2018).

84.   Fifth Circuit Court of Appeals case law makes clear that when an arrestee is not actively resisting arrest the degree of force an officer can employ is reduced. *Id.*

85.  In Texas, the use of force to resist an arrest is justified: (1) if, before the actor offers any resistance, the peace officer uses or attempts to use greater force than necessary to make the arrest or search; and (2) when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the peace officer's use or attempted use of greater force than necessary. Tex. Penal Code Ann. § 9.31.

86.  Plaintiff Hayes' was at most passively resisting arrest when he (1) asked Defendant Officer Guab what was happening, (2) he told Defendant Officer that he had not given him permission to reach into his vehicle; (3) asked why he was forcibly being pulled from his vehicle and (4) his stiffening of his body once he

P

was on the ground in an involuntary self-preservation mechanism against the unlawful excessive force that was being rained down upon him.

87. Even though Plaintiff Hayes was at most passively resisting arrest, Defendant Officers Guab and Hubbs' responded with the use excessive of force by grabbing and forcibly pushing Plaintiff Hayes to the ground and then joining Defendant Dallas Police Officers DOES 1 through 10 in (1) kicking, punching, and tasing Plaintiff Hayes, (2) pinning Plaintiff Hayes with their shins on his skull, neck and back; (3) pulling Plaintiff Hayes' arm out of his shoulder socket – all of which was greater force than was necessary to arrest Plaintiff Hayes because he was not actively resisting arrest.

88. Defendant Officers Guab and Hubbs did not have probably cause to suspect Plaintiff Hayes had committed committing a felony offense before they used excessive force by grabbing and forcibly pushing Plaintiff Hayes to the ground and then joining Defendant Dallas Police Officers DOES 1 through 10 in (1) kicking, punching, and tasing Plaintiff Hayes, (2) pinning Plaintiff Hayes with their shins on his skull, neck and back; (3) pulling Plaintiff Hayes' arm out of his shoulder socket.

89. Plaintiff Hayes was not attempting to flee or evade arrest, and when Defendant Officers Guab and Hubbs as well as the Defendant Dallas Police Officers DOES 1 through 10 began to apply handcuffs to his wrists.

90. Plaintiff Hayes allowed Defendant Officers Guab and Hubbs as well as the

P

Defendant Dallas Police Officers DOES 1 through 10 to apply handcuffs to his person prior to Defendant Officers Guab and Hubbs and the Defendant Dallas Police Officers escalating the situation and using force greater than necessary to affect an unlawful arrest that was made without probable cause.

91.  A reasonable Police Officer in Defendant Officers Guab and Hubbs' shoes would know that the above alleged uses of force were clearly excessive when engaging with citizens such as Plaintiff Hayes, who was not threatening any officer or other person, was not innocent personed of committing any actual crime, was not attempting to flee, was not actively resisting arrest and at most was passively resisting arrest.

92.  A reasonable Police Officer in Defendant Officers Guab and Hubbs' shoes would know that the level of force that they deployed during the above alleged events was clearly unreasonable and excessive.

93.  As a direct result of the force used against Plaintiff Hayes by Defendant Officers Guab and Hubbs, he suffered damages, physical injury, pain, and mental anguish.

94.  Defendant Officers Guab and Hubbs caused Plaintiff Hayes to suffer injuries, extreme pain and suffering by (1) kicking, punching, and tasing Plaintiff Hayes, (2) pinning Plaintiff Hayes with their shins on his skull, neck and back; (3) pulling Plaintiff Hayes' arm out of his shoulder socket.

P

95.  Plaintiff Hayes's injuries were not caused by any other means.

96.  As a result of Defendant Officers Guab and Hobbs' deployment of excessive force, Plaintiff Hayes' constitutional and civil rights were violated, and he has suffered damages, emotional distress, post-traumatic stress, pain, suffering and permanent physical disfigurement.

**COUNT TWO: UNLAWFUL ARREST**
**VIOLATION OF THE FOURTH AMENDMENT PURSUANT TO 42**
**U.S.C. § 1983 AGAINST DEFENDANT DALLAS POLICE**
**OFFICERS GUAB AND HUBBS**

97.  Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

98.  No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. *Terry v. Ohio*, 392 U.S. 1, 9 (1968).

99.  There can be no doubt that the right not to be arrested absent probable cause was clearly established at the time of Plaintiff Hayes's arrest. *Alexander v. City of Round Rock*, 854 F.3d 298, 306–07 (5th Cir. 2017).

100.  To determine the presence or absence of probable cause, the totality of the circumstances surrounding the arrest must be considered.

101.  Defendant Officers Guab and Hubbs deprived Plaintiff Hayes of his constitutionally protected right to be free from unreasonable seizures under the

P

Fourth Amendment by falsely arresting him despite lacking probable cause that any crime had been committed.

102.    Defendant Officers Guab and Hubbs racially profiled Plaintiff Hayes and began following his vehicle. While following Plaintiff Hayes, Defendant Officer Hubbs decided to run a registration check on Plaintiff Hayes' vehicle.

103.    Defendant Officer Hubbs' registration check indicated that Plaintiff Hayes' vehicle was registered to an individual named "*Sylvester* Hayes." Defendant Officer Hubbs then cross-checked the name "*Sylvester* Hayes" in the Adult Information System ("AIS") law enforcement database, which revealed an active family violence warrant.

104.    Defendant Officers Hubbs and Guab did not verify check the fact that Plaintiff Hayes' name is spelled "*Silvester* Hayes" and not "*Sylvester* Hayes."

105.    Instead, based on their erroneous and objectively unreasonable belief that Plaintiff Hayes was the person that had the family violence warrant, Defendant Officers Hubbs and Guab followed Plaintiff Hayes' vehicle seeking a pretext to stop his vehicle and seize him. When Plaintiff Hayes failed to indicate before turning left in an intersection, Defendant Officers Hubbs and Guab found the pretext that they were looking for and stopped Plaintiff Hayes' vehicle.

P

106.     With Plaintiff Hayes stopped, without probable cause, Defendant
Officers Hubbs and Guab embarked on their misguided criminal investigation
of the erroneous family violence warrant.

107.     Officer Guab approached the driver side window of Plaintiff Hayes'
vehicle and Plaintiff Hayes gave him his driver's license.

108.     Defendant Officer Guab walked to the rear of Plaintiff Hayes' vehicle
and  handed Plaintiff Hayes' driver's license to Defendant Officer Hubbs and
informed her of Plaintiff Hayes' name without verifying that the spelling of his
name was not the "*Sylvester* Hayes" that was the subject of the family violence
warrant.

109.     Rather than return to her Dallas Police Department cruiser to use its
computer to run a check on Plaintiff Hayes' driver's license through the Dallas
Police Department's database, without probable cause, Defendant Officer
Hubbs erroneously informed Defendant Officer Guab that Plaintiff Hayes was
the same "*Sylvester* Hayes" that was wanted for a family violence warrant.

110.     Because a simple check would have told them that Plaintiff Hayes' name
had a different spelling and that he was not the "*Sylvester* Hayes" that they
thought he was, there was not probable cause for Defendant Officers Hubbs and
Guab to believe that Plaintiff Hayes had a family violence warrant.

111.     Without verifying the erroneous information provided to him by
Defendant Officer Hubbs, Defendant Officer Guab returned to Plaintiff Hayes'

P

vehicle's driver's side window and without explanation proceeded to reach inside Plaintiff Hayes' vehicle to open the driver's side door and seize Plaintiff Hayes in violation of his Fourth Amendment rights.

112.     Because a simple check would have told them that Plaintiff Hayes' name had a different spelling and that he was not the "Sylvester Hayes" that they thought he was, there was not probable cause for Defendant Officers Hubbs and Guab to believe that Plaintiff Hayes had a family violence warrant. Therefore, the tragic events that followed are the product of an illegal seizure that resulted in the violation of Plaintiff Hayes' civil and constitutional rights in violation of the Fourth Amendment.

113.     Without verifying the erroneous information that was provided to him by Defendant Officer Hubbs, Defendant Officer Guab marched back to Plaintiff Hayes' driver's side window and without explanation proceeded to reach inside Plaintiff Hayes' vehicle to open the driver's side door and seize Plaintiff Hayes.

114.     Because Defendant Officer Guab returned to Plaintiff Hayes' vehicle, reached into his driver's side window, and opened his door without running and verifying Plaintiff Hayes' driver's license in the City of Dallas Police Department's database, Defendant Officers Guab and Hubbs turned what would have been a routine traffic stop into an illegal seizure that violated Plaintiff Hayes' Fourth Amendment rights.

P

115.    After opening the vehicle's door, without probable cause, Defendant Officer Guab and Hubbs then forcibly seized and removed Plaintiff Hayes from his vehicle.

116.    Defendant Dallas Police Officers Guab and Hubbs intentionally seized, detained and arrested Plaintiff Hayes by placing him in handcuffs based on a warrant that was not intended for him, without his consent, and without any legal justification.

117.    Defendant Dallas Police Officers Guab and Hubbs willfully arrested Plaintiff Hayes without probable cause.

118.    Defendant Dallas Police Officers Guab and Hubbs did not have probable cause to support arresting Plaintiff Hayes when they placed Plaintiff Hayes under arrest. *Turner*, 848 F.3d at 688; U.S. Const. Amend. 1.

119.    Additional factual support that Plaintiff Hayes was illegally arrested by Defendant Officers Guab and Hubbs is evidenced by the fact that the purported charges that they unlawfully used to arrest his on were ultimately dismissed by Defendant Dallas.

120.    Defendant Officers Guab and Hubbs did not have authority of law to arrest Plaintiff Hayes because they did not have a warrant or probable cause to arrest him, and no other exigent circumstances existed that justified Plaintiff Hayes's arrest.

P

121.     By recklessly arresting Plaintiff Hayes without consent, without probable cause, and without legal justification, Defendant Officers Guab and Hubbs deprived Plaintiff Hayes of his Fourth Amendment right to be free from unreasonable seizures.

122.     As a result of the illegal arrest, Defendant Officers Guab and Hubbs deprived Plaintiff Hayes of his civil, constitutional, and statutory rights and they are liable to Plaintiff Hayes under 42 U.S.C. § 1983.

123.     As a result of the illegal arrest, Plaintiff Hayes suffered damages and injuries.

124.     Plaintiff Hayes was damaged because of Defendant Officers Guab and Hubbs' wrongful acts and their deprivation of his liberty.

125.     Additionally, when making the illegal arrest, Defendant Officers Guab and Hubbs caused Plaintiff Hayes physical pain and suffering by (1) kicking, punching, and tasing Plaintiff Hayes, (2) pinning Plaintiff Hayes with their shins on his skull, neck and back; (3) pulling Plaintiff Hayes' arm out of his shoulder socket.

126.     As a result of Defendant Officers Guab and Hobbs' unlawful arrest, Plaintiff Hayes' constitutional and civil rights were violated, and he has suffered damages, emotional distress, post-traumatic stress, pain, suffering and permanent physical disfigurement.

P

## COUNT THREE:  VIOLATION OF THE FOURTH AMENDMENT
## PURSUANT TO 42 U.S.C. § 1983 AGAINST
## DEFENDANT CITY OF DALLAS

127.      Plaintiff Hayes repeats and re-alleges each and every allegation

contained in the above paragraphs as if fully repeated herein.

128.      In order to state a claim against a municipality under 42 U.S.C. §1983, a

plaintiff must which identify: (1) a policymaker; (2) an official policy or custom;

and (3) a violation of constitutional rights whose "moving force" is the policy or

custom. *Piotrowski*, 237 F.3d at 578; *See also*, *Meadow briar Home for Children,*

*Inc. v. Gunn*, 81 F.3d 521, 533 (5th Cir. 1996) (citing *Palmer v. City of San*

*Antonio*, 810 F.2d 514, 516 (5th Cir. 1987) (the Fifth Circuit requires a plaintiff

plead "***facts*** which show that: (1) a policy or custom existed; (2) the

governmental policymakers actually or constructively knew of its existence; (3) a

constitutional violation occurred; and (4) the custom or policy served as the

moving force behind the violation.") "[T]he 'official policy' requirement was

intended to distinguish acts of the *municipality* from acts of *employees* of the

municipality, and thereby make clear that municipal liability is limited to action

for which the municipality is actually responsible." *Hunter v. City of Houston,*

564 F.Supp.3d 517, 529 (S.D. Tex. 2021), *quoting Doe v. Edgewood Indep. Sch.*

*Dist.*, 964 F.3d 351, 364-65 (5th Cir. 2020).

P

129.    Pursuant to *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978) and 42 U.S.C. § 1983, Defendant Dallas is liable for all damages suffered by Plaintiff Hayes on the following grounds:

a. Defendant Dallas Officers Guab and Hobbs were acting under color of law and acting pursuant to customs, practices and policies of Defendant Dallas, Defendant Dallas' Police Department and Defendant Dallas' Policy Makers in regard to the use of excessive force as authorized and/or ratified by the Defendant Dallas' Policy Makers.

b. Defendant Dallas' Police Department failure to discipline Defendant Officers Guab and Hubbs for racially profiling, seizing Plaintiff Hayes without probable cause, failing to verify Plaintiff Hayes' identity before seizing him and then using excessive force to effect his arrest evidences that Defendant Officers Guab and Hubbs' conduct in violating Plaintiff Hayes' civil and constitutional rights evidences that the Officer's conduct was consistent with the Defendant Dallas' Police Departments' policies and customs and that their acts were condoned by the Defendant Dallas.

In addition to not disciplining Defendant Officers Guab and Hubbs for their conduct, none of the Dallas Policer Officers DOES 1 through 10 were disciplined for the excessive force that they used to arrest Plaintiff Hayes under an erroneous warrant that a simple check would have indicated was for another person that was not Plaintiff Hayes. The fact that Defendant

P

Dallas did not discipline any of the Dallas Police Officers involved in the violent arrest of Plaintiff Hayes evidences that the Officers' violent actions were consistent with the Defendant Dallas' policy and custom of using excessive force on am innocent person who was at most passively resisting arrest.

c.  Plaintiff Hayes was deprived of rights and privileges secured to him by the United States Constitution and by other laws of the United States, by the Defendant Dallas failing to provide proper training, adequate supervision, or discipline in dealing with individuals such as Plaintiff Hayes in violation of 42 U.S.C. § 1983 and related provisions of federal law and in violation of the above cited constitutional provisions.

Specifically, Defendant Dallas failed to adequately train its officers on how to:

(1) Verify an innocent person's identity and/or complete a check of an innocent person's (such as Plaintiff Hayes) driver's license through the Dallas Police Department's database before proceeding to seize, detain and/or arrest that innocent person;

(2) Provide adequate training on proper arrest and confrontation techniques and the subsequent use of excessive force as described above;

(3)  Use proper and appropriate seizure, detention, and arrest procedures;

(4) To not use excessive and/or deadly force when a person is not or is at most

P

35

passively resisting arrest;

  (5) To use less violent means to seize, detain or arrest a person;

  (6) To utilize de-escalation methods to de-escalate a conflict.

130.      The failure to train its officers in a relevant respect reflects a deliberate indifference by Defendant Dallas and Defendant Dallas' Policy Makers to the rights of the City's inhabitants and is actionable under 42 U.S.C. § 1983.

131.      Defendant Dallas has a long-standing record of not providing Dallas Police Department officers with adequate training on de-escalation techniques intended to prevent instances of excessive and deadly force and even extrajudicial killings by Dallas Police officers.

132.      The actual practice or custom of the Defendant Dallas' Police Department regarding the use of excessive and/or deadly force is to "shoot first and ask questions later."

133.      As a result of the lack of training and the official custom or policies of the Defendant Dallas' Police Department, there have been a number of incidences of using excessive force in the beating and/or shooting of unarmed minorities: On or about July 24, 2012, unarmed James Harper ("Harper") was fatally shot by DPD officer Brian Rowden ("Rowden"). Rowden pursued Harper on foot and fired a shot at Harper as he ran away. Rowden was not disciplined for the unlawful killing of Harper. On or about March 10, 2013, unarmed Clinton Allen ("Allen") was fatally shot 7 times by Defendant Dallas' Police Department

P

officer Clark Staller.  Allen was wrongfully gunned down although he held both hands up. Clark Staller, despite previously falsifying a police report prior to the shooting death of Allen, was allowed to remain on as an officer and was not disciplined for the death of Allen. Clark Staller was allowed to prepare his statement of the incident with the assistance of his attorney and was not asked any questions to determine the veracity of his statements. On or about October 14, 2013, a Defendant Dallas' Police Department officer shot Bobby Bennett ("Bennett"), an unarmed individual, and attempted to falsify a police report but a video exposed the attempted cover-up.  David Blair, an unarmed individual was standing outside of his east Oak Cliff apartment on October 2, 2013, when a pair of Dallas Police Officers harassed him for no lawful reason.  The officers approached him, followed him to his apartment and shot at him 14 times as he stepped out of his apartment for no lawful reason.  Blair's story surfaced just a week after a video circulated of a Dallas police officer shooting Bennett, a man with mental challenges, after he stood up from a chair he set in the middle of a cul-de-sac. Police initially claimed the man lunged at them, but the video showed otherwise. An aggravated assault charge against the wounded man has since been dropped. On December 10, 2013, 19-year-old Kelvion Walker was still in the vehicle with his hands up when a Dallas police officer shot him. On August 27, 2015, an unarmed Bertrand Syjuan Davis was fatally shot by Officer Matthew Terry. According to multiple witness accounts, immediately upon arriving at the scene,

P

Officer Terry failed to conduct an objectively reasonable assessment of the facts, drew his gun, and shot Bert several times including once in the back, without any verbal warning. Per witnesses, Officer Terry was not facing or reacting to an imminent threat of death or serious bodily injury to him or any other person at the time he fired multiple shots that struck Bert, including one to the back. Officer Terry was not disciplined by the Defendant Dallas' Police Department for his wrongful conduct. On January 18, 2017, Officers Christopher Hess and Jason Kimpel used excessive and deadly force resulting in the death of 21-year-old Genevive Dawes and the injuries to Virgilio Rosales. As Dawes drove in her vehicle in reverse at a very slow rate of speed, Hess and Kimpel fired at least 13 shots through the passenger side window where Rosales was seated, striking Dawes five times in the neck, her right triceps, left arm, upper left chest, and right forearm. Dawes's right earlobe was also partially amputated. Dawes was transported to Baylor Hospital where she later died as a result of her injuries. Hess's defense for firing at the moving vehicle was not supported by body cam evidence. Despite body cam footage that shows Dawes was not trying to injure anyone as she reversed her vehicle, Hess and Kimpel were not terminated for their violation of Defendant Dallas' policy. In fact, Defendant Dallas' Police Department attempted to cover-up this shooting until the body cam footage was released to the Dallas District Attorney's office almost six months later. Hess was indicted for the death of Dawes.

P

134.     The above incidents evidence there exists a persistent, widespread defacto policy or custom followed by Dallas Police Officers to use excessive force and shoot innocent persons and/or detainees that result from the training or lack thereof, received by Defendant Dallas.

135.     Defendant Police Officers Guab and Hubbs were acting under the color of law and acting pursuant to customs, practices and policies of the Defendant Dallas, Defendant Dallas' Police Department and Defendant Dallas' Policy Makers in regard to the use of excessive force as authorized and/or ratified by the Defendant Dallas' Policy Makers.  Plaintiff Hayes was deprived of rights and privileges secured to him by the United States Constitution and by other laws of the United States, by Defendant Dallas failing to provide proper training, adequate supervision, or discipline in dealing with individuals such as Plaintiff Hayes in violation of 42 U.S.C. §1983 and related provisions of federal law and in violation of the above cited constitutional provisions.

136.     Defendant Dallas' policy of inadequate and improper training of police officers on proper detention and seizure procedures and the use of excessive and/or deadly force, resulted in the constitutional deprivations and damages alleged herein.

137.     As a direct cause and result of the constitutional violations as set forth herein, Plaintiff Hayes's constitutional and civil rights were violated, and he has suffered damages, emotional distress, post-traumatic stress, pain, suffering

P

and permanent physical disfigurement, and permanent physical disability. Further Plaintiff Hayes incurred extreme pain, injuries and substantial economic damages for which Plaintiff Hayes seeks compensation, as set forth more specifically in the section of this Complaint entitled "Damages."

## VI.   DAMAGES

138.  Plaintiff Hayes repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

139.  Plaintiff Hayes's injuries were a foreseeable event.

140.  Plaintiff Hayes's injuries were directly and proximately caused by the Defendants' violation of his constitutional and civil rights.

141.  As a result, Plaintiff Hayes is entitled to recover all actual damages allowed by law.

142.  Plaintiff Hayes contends that each of the Dallas County Defendants' conduct constitutes malice, evil intent, or reckless or callous indifference to Plaintiff Hayes's federally protected rights. Thus, Plaintiff Hayes is entitled to punitive damages against the Defendants.

143.  As a direct and proximate result of the occurrence which made the basis of this lawsuit, Plaintiff Hayes was forced to suffer:

   a.  Emotional distress, torment, and mental anguish;

   b.  Physical injuries;

P

c.  Physical pain and suffering;

d.  Permanent physical disfigurement;

e.  Permanent physical disability;

f.  Economic damages, and

g.  Deprivations of his liberty.

144.    Pursuant to 42 U.S.C. §1983, Plaintiff Hayes seeks to recover, and hereby requests the award of damages, punitive damages, reasonable attorney's fees, and costs of court.

## VII.   ATTORNEY'S FEES

145.    Plaintiff Hayes prevails in this action, by settlement or otherwise, Plaintiff Hayes is entitled to and hereby demands attorney's fees under 42 U.S.C. § 1988.

## VIII.      JURY DEMAND

146.    Plaintiff Hayes respectfully requests a jury trial.

## IX.    PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff Hayes prays that judgment be rendered against the Defendants, for an amount in excess of the jurisdictional minimum of this Court. Plaintiff Hayes further prays for all other relief, both legal and equitable, to which he may show himself justly entitled.

P

## X.  CERITIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information and belief that this Complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule

Respectfully submitted,

**Robinius, Espinosa & Wietzel, LLC**

**By:_____**
**Mark Robinius**
**Texas State Bar No. 24025865**
**6060 North Central Expressway**
**Suite 212**
**Dallas, Texas 75206**
**Phone: (972) 487-3785**
**Fax: (972) 205-9421**
**RSHlawfirmllp@gmail.com**
**www.REWLAWGROUP.com**
**ATTORNEY     FOR     THE     PLAINTIFF**
**SILVESTER HAYES**

## CERTIFICATE OF SERVICE

I do hereby certify that on March 1, 2024, a true and correct copy of the foregoing Amended Complaint has been served on all parties of record via the eFile system.

_____
**Mark Robinius**