IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SILVESTER HAYES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:23-cv-2271-S |
| | § | |
| CITY OF DALLAS, et al., | § | |
| | § | |
| Defendants. | § | |

---

**DEFENDANTS' REPLY IN SUPPORT OF
THEIR RENEWED MOTION FOR SUMMARY JUDGMENT**

---

CITY ATTORNEY OF THE CITY OF DALLAS

Tammy L. Palomino
City Attorney

*s/ Lindsay Wilson Gowin*
Lindsay Wilson Gowin
Deputy Chief of Torts
Texas State Bar No. 24111401
lindsay.gowin@dallas.gov

Dallas City Hall 7DN
1500 Marilla Street
Dallas, Texas 75201
Telephone:    214-670-3519
Telecopier:   214-670-0622

*Attorneys for Defendants Holly Harris, Walter
Guab, and the City of Dallas*

## TABLE OF CONTENTS

I.  SUMMARY OF REPLY ................................................................................................ 6

II.  ARGUMENTS AND AUTHORITIES ..................................................................... 7

   A.  Irrelevant portions of Plaintiff's affidavit should be disregarded. ...................................... 8

   B.  Plaintiff's arrest was constitutional. .................................................................................... 9

   C.  Plaintiff has failed to raise a genuine issue as to whether Defendant Officers' use of force was excessive. .................................................................................................... 14

     1.  Plaintiff has misrepresented his noncompliance and resistance against the officers. .... 14

     2.  Plaintiff has misrepresented the types of force the officers used against him. .............. 16

   D.  Defendant Officers are entitled to qualified immunity. ..................................................... 19

     1.  Plaintiff has failed to point to any analogous cases showing that his arrest violated clearly established law. ............................................................................................... 20

     2.  Plaintiff has failed to point to any analogous cases showing that Defendant Officers' use of force violated clearly established law. ................................................................ 21

   E.  In the absence of an underlying constitutional violation, Plaintiff's claims against the City fail as a matter of law. ....................................................................................................... 22

## TABLE OF AUTHORITIES

**Cases**

*Albrechsten v. Bd. of Regents of Univ. of Wisc. Sys.*,
309 F.3d 433 (7th Cir. 2002) ................................................................. 8

*Alpha v. Hooper*,
440 F. 3d 670 (5th Cir. 2006) ............................................................. 22

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011) ........................................................................... 19

*Atwater v. City of Lago Vista*,
532 U.S. 318 (2001). ..................................................................... 9, 10

*Berckeley Inv. Group, Ltd. v. Colkitt*,
455 F.3d 195 (3d Cir. 2006) ................................................................. 7

*Betts v. Brennan*,
22 F.4th 577 (5th Cir. 2022) ............................................................. 19

*Burge v. St. Tammany Parish*,
187 F.3d 452 (5th Cir. 1999) ............................................................... 9

*City of Los Angeles v. Heller*,
475 U.S. 796 (1986) ........................................................................... 22

*Craig v. Martin*,
49 F.4th 404 (5th Cir. 2022) ........................................... 8, 14, 19, 21

*Darden v. City of Fort Worth*,
880 722 (5th Cir. 2018) ..................................................................... 20

*Devenpeck v. Alford*,
543 U.S. 146 (2004) .............................................................. 9, 12, 13

*Deville v. Marcantel*,
567 F.3d 156 (5th Cir. 2009) ............................................................. 14

*Duckett v. City of Cedar Park*,
950 F.2d 272 (5th Cir. 1992) ............................................................... 9

*Finley v. State*,
484 S.W.3d 926 (Tex. Crim. App. 2016) ........................................... 11

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982) ........................................................................... 19

*Hartsfield v. Lemacks*,
50 F.3d 950 (11th Cir. 1995) ............................................................. 21

*Hudson v. McMillian*,
503 U.S. 1 (1992) ......................................................................... 21, 22

*Jimerson v. Lewis*,
94 F.4th 423 (5th Cir. 2024) ............................................................. 21

*Joseph ex rel. Est. of Joseph v. Bartlett*,
   981 F.3d 319 (5th Cir. 2020) ........................................................................ 16

*Kansas v. Glover*,
   589 U.S. 376 (2020) .............................................................................. 9, 10

*Kingsley v. Hendrickson*,
   576 U.S. 389 (2015) .................................................................................... 22

*Lewis v. Greenwood Motor Lines, Inc.*,
   No. 22-10758, 2023 WL 2810881 (5th Cir. Apr. 6, 2023) ......................... 7

*Livingston v. Texas*,
   No. 22-240719, 2023 WL 4931932 (5th Cir. Aug. 2, 2023) .................... 19

*Maryland v. Garrison*,
   480 U.S. 79 (1987) ...................................................................................... 20

*Meadours v. Ermel*,
   483 F.3d 417 (5th Cir. 2007) ...................................................................... 16

*Oscar Renda Contracting, Inc. v. City of Lubbock*,
   No. 5:05-CV-029-C, 2008 WL 11429735 (N.D. Tex. Apr. 18, 2008) ....... 7

*Pearson v. Callahan*,
   555 U.S. 223 (2009) .................................................................................... 19

*Pennsylvania v. Mimms,*
   424 U.S. 106 (1977) .................................................................................... 13

*Poole v. City of Shreveport*,
   691 F.3d 624 (5th Cir. 2012) ...................................................................... 14

*Ramirez v. Martin*,
   No. 22-10011, 2022 WL 16548053 (5th Cir. Oct. 31, 2022) ................... 19

*Rogers v. Hooper*,
   271 F. App'x 431 (5th Cir. 2008) ............................................................... 21

*Sam v. Richard*,
   887 F.3d 710, (5th Cir. 2018) ..................................................................... 12

*Solis v. Serrett*,
   31 F.4th 975 (5th Cir. 2022) ....................................................................... 19

*United States v. Martin*,
   68 F.3d 469, 1995 WL 581913 (5th Cir. 1995) ......................................... 11

*United States v. Walker*,
   H-20-222, 2021 WL 951665 (S.D. Tex. Mar. 12, 2021) ........................... 10

*Velazquez v. Baker*,
   No. 5:20-CV-078-BQ, 2021 WL 812505 (N.D. Tex. Jan. 28, 2021) ....... 22

*Walker v. City of Houston*,
   No. 22-20537, 2023 WL 6457926 (5th Cir. Oct. 4, 2023) ....................... 19

*Whren v. United States*,
   517 U.S. 806 (1996) ............................................................................ 12, 13

*Wilkens v. Gaddy*,
   559 U.S. 34 (2010) ...................................................................................... 21

**Statutes**

Tex. Penal Code § 38.03 ............................................................................... 11

Texas Penal Code § 38.01 (a)(1) ................................................................. 11

Texas Penal Code § 38.03 (a) ...................................................................... 11

Texas Penal Code § 38.03 (b) ...................................................................... 11

**Other Publications**

William P. Bozeman, et al.,
   *Safety of Vascular Neck Restraint Applied by Law Enforcement Officers*, 92 J. Forensic &
   Legal Med. 102446 (Nov. 2022) ............................................................... 18

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SILVESTER HAYES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:23cv2271-S |
| | § | |
| CITY OF DALLAS, et al., | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' REPLY IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE COURT:

Defendants Holly Harris, Walter Guab, and the City of Dallas file this reply in support of their joint motion for summary judgment as to all claims alleged against them by Plaintiff Silvester Hayes.

**I.     SUMMARY OF REPLY**

Plaintiff's Response Brief ("Resp.", Dkt. No. 40) and supporting appendix ("Pl. App.", Dkt. No. 41) offer three key concessions that make summary judgment in favor of Defendants inevitable:

(1) Plaintiff does not dispute that his interactions with Defendants were entirely captured on video by the officers' body-worn and dashboard cameras filed as part of Defendants' summary judgment appendix ("App.", Dkt. Nos. 17-18 at Ex. 1-21).

(2) In his unsworn pleadings Plaintiff repeatedly claimed that Officers Guab and Harris joined other unnamed officers in "kicking, punching, and tasing" him, but he declined to make those accusations in his affidavit made under penalty of perjury (*compare* 1st Am. Compl. (Dkt. No. 24) ¶¶ 87, 88, 94, 125, *with* Pl. App. at 001-07); and

(3) Plaintiff admits to committing a traffic violation in plain view of the officers (Pl. App. at 003), which indisputably provides probable cause for his arrest from the outset of the incident.

Especially in light of those concessions, there are no genuine disputes of material fact. The Court can adjudicate the excessive force claim based upon the contents of the videos, which show that Officers Guab and Harris did not use excessive force or otherwise violate Plaintiff's constitutional rights. Because no constitutional violations occurred, Plaintiff's *Monell* claims against the City fail as a matter of law. Accordingly, all the defendants are entitled to summary judgment in their favor on all claims.

## II.    ARGUMENTS AND AUTHORITIES

Summary judgment "is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Oscar Renda Contracting, Inc. v. City of Lubbock*, No. 5:05-CV-029-C, 2008 WL 11429735, at *15 (N.D. Tex. Apr. 18, 2008) (quoting *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)). Plaintiff violated Local Rule 56.5(c) by failing to provide citations to the record (or any evidence at all) for many of the assertions in his Response. Plaintiff's Response also contains many footnotes directing the reader to one or more videos without providing time stamps, thus obfuscating which portions of the videos Plaintiff contends support his argument. *See, e.g.*, Resp. ⁋ 11 n.14 (citing all twenty-one videos with no time stamps). Because "'[j]udges are not like pigs, hunting for truffles buried in the record,'" the Court is "not required to review the entire summary-judgment record to search for fact disputes supporting [Plaintiff's] opposition to the defendants' summary-judgment motion." *Lewis v. Greenwood Motor Lines, Inc.*, No. 22-10758, 2023 WL 2810881, at *2 (5th Cir. Apr. 6, 2023) (quoting *Albrechsten v. Bd. of Regents of Univ. of Wisc. Sys.*, 309 F.3d 433, 436 (7th

Cir. 2002)). All assertions lacking an evidentiary basis and/or a citation to the record should therefore be disregarded.

As explained below and in Defendants' opening brief (Dkt. No. 31), Plaintiff's admitted traffic violation is fatal to his false arrest claim, and the videos from the officers' body-worn cameras ("BWC") and dashboard cameras ("dashcam") are fatal to his excessive force claim. In the absence of an underlying constitutional violation, Plaintiff's claims against the City fail as a matter of law. Accordingly, Defendants are entitled to summary judgment on all claims.

### A.    Irrelevant portions of Plaintiff's affidavit should be disregarded.

In addition to referring to the videos Defendants filed in support of their motion for summary judgment, Plaintiff also submitted his own affidavit, which has limited evidentiary value for two main reasons. First, as discussed more specifically throughout this Reply, Plaintiff's description of events omits his noncompliance and resistance, and misrepresents the officers' actions as depicted in the videos of the event. Pl. App. (Dkt. 41-1) at 001-07. The Fifth Circuit has instructed "if there is video evidence that blatantly contradicts the plaintiffs' allegations, the court should not adopt the plaintiffs' version of the facts; instead, the court should view those facts in the light depicted by the videotape." *Craig v. Martin*, 49 F.4th 404, 409 (5th Cir. 2022) (internal quotations and citations omitted). Therefore, Plaintiff's affidavit should be disregarded to the extent it contradicts the video evidence.

Second, his affidavit also contains many irrelevant descriptions of Plaintiff's opinions and emotions. Fourth Amendment analyses must be performed not from a plaintiff's perspective, but rather "from the perspective of the reasonable officer on the scene," *id.* at 410, based on "the facts known to the arresting officer at the time" of the incident, *Devenpeck v. Alford*, 543 U.S. 146, 152

(2004). Only Plaintiff's actions matter in this analysis; the proclaimed reasons for his unlawful behavior do not, and they should be disregarded.

### B.     Plaintiff's arrest was constitutional.

To state a § 1983 false arrest claim, Plaintiff must show that he was arrested without probable cause. *Burge v. St. Tammany Parish*, 187 F.3d 452, 480 (5th Cir. 1999). "A police officer has probable cause to arrest if, at the time of the arrest, he had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime." *Duckett v. City of Cedar Park*, 950 F.2d 272, 278 (5th Cir. 1992). It is well-established that an officer "may arrest an individual without violating the Fourth Amendment if there is probable cause to believe that the offender has committed even a very minor criminal offense in the officer's presence." *Atwater v. City of Lago Vista*, 532 U.S. 318, 322 (2001).

Plaintiff's Response focuses heavily on his "mistaken identity" theory regarding Defendant Officers' investigation of an active domestic violence arrest warrant. *See, e.g.*, Resp. at 5-7, 10-12, 17-27. However, this theory fundamentally misunderstands decades of Fourth Amendment jurisprudence governing investigative stops. According to the Supreme Court,

> the Fourth Amendment permits an officer to initiate a brief investigative traffic stop when he has a particularized and objective basis for suspecting the particular person stopped of criminal activity. Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause.

*Kansas v. Glover*, 589 U.S. 376, 380 (2020). Plaintiff admits that Defendant Officers' law enforcement databases indicated that (1) active domestic violence arrest warrants existed for an individual named "Sylvester Hayes," and (2) Plaintiff's car was registered to "Sylvester Hayes" (spelled the same way as the subject of the active warrants). Resp. ¶ 7. "Texas courts have consistently held that officers may justifiably initiate a traffic stop based on information they find

in their squad-car computers." *United States v. Walker*, H-20-222, 2021 WL 951665, at *9 (S.D. Tex. Mar. 12, 2021) (collecting cases). Officers Guab and Harris reasonably and correctly drew the "commonsense inference" that the driver of Plaintiff's car was the registered owner. *Glover*, 589 U.S. at 381. The officers had reasonable suspicion to believe Plaintiff could be the subject of the active warrants, which provided them with a lawful basis to pull him over to investigate. Their decision to briefly detain Plaintiff to determine if he was the subject identified in the domestic violence warrants was also reasonable.  The subsequent revelation that Plaintiff was not the "Sylvester Hayes" identified in the domestic violence warrants does not render the traffic stop or Plaintiff's arrest unlawful, and Plaintiff offers no case law holding otherwise.

For purposes of this probable cause analysis, however, the domestic violence warrants became legally irrelevant when Defendant Officers saw Plaintiff commit a traffic violation. Plaintiff admits in his affidavit that he committed a traffic violation in plain view of the officers: "[W]hen Police Officers Guab and Harris started aggressively following me . . . I failed to indicate when I turned, and Officers Guab and Harris turned on their police lights and I stopped my vehicle." Pl. App. at 003; *see also* Resp. ¶ 53. Failing to use a turn signal before turning violates Section 545.104 of the Texas Transportation Code. An officer "may arrest an individual without violating the Fourth Amendment if there is probable cause to believe that the offender has committed even a very minor criminal offense in the officer's presence." *Atwater*, 532 U.S. at 322. Therefore, based on having personally observed Plaintiff commit a traffic violation, Defendant Officers had probable cause to arrest him from the very outset of the traffic stop. Plaintiff offered no response to this argument.

As discussed in Defendants' opening brief, Plaintiff also created probable cause for his arrest when he refused to get out of the car, and then physically resisted the officers' efforts to

remove him from the vehicle, search him, and place him in the back seat of the squad car. App. Ex. 1 (Harris BWC) at 0:46-6:07; Ex. 2 (Whitman BWC) at 0:40-1:13; Ex. 4 (Guab BWC) 0:00-3:38; Ex. 5 (Luciano BWC) at 0:33-2:42; Ex. 21 (Dashcam) 0:00-4:10. In doing so, Plaintiff violated both Texas Penal Code § 38.01 (a)(1) (interfering with public duties) and Texas Penal Code § 38.03 (a) (resisting arrest, search or transportation). *See also Finley v. State*, 484 S.W.3d 926 (Tex. Crim. App. 2016) (defendant "used force against the officers by pulling against the officers' force. In this case, pulling away from the officers satisfies the 'in opposition or hostility [toward the police officers]' requirement" of Tex. Penal Code § 38.03). Plaintiff's bald assertions about racial profiling and misapprehension about whether Officer Guab could order him out of the car are irrelevant: Texas Penal Code § 38.03 (b) states that "[i]t is no defense to prosecution under this section that the arrest or search was unlawful." Plaintiff's only response to this argument is denial: he claims he was "at most offering passive non-violent resistance and posed absolutely no threat and was quickly in full surrender to Defendant Officers Guab and Harris." Resp. ⁋ 132 (citing Plaintiff's entire affidavit and all twenty-one videos of the incident without time stamps). Videos of the incident show that Plaintiff fought against the officers throughout their encounter. *See* App. Ex. 1 (Harris BWC) at 0:46-6:07; Ex. 2 (Whitman BWC) at 0:40-1:13; Ex. 4 (Guab BWC) 0:00-3:38; Ex. 5 (Luciano BWC) at 0:33-2:42; Ex. 21 (Dashcam) 0:00-4:10.

Finally, Plaintiff also was the subject of an outstanding arrest warrant for a prior traffic violation, making his arrest not only lawful, but mandatory. App. at 007. "[O]utstanding warrants constitute[] probable cause to arrest." *United States v. Martin*, 68 F.3d 469, 1995 WL 581913, at *2 (5th Cir. 1995) (*per curiam*). Plaintiff's Response does not address this point at all.

Instead, Plaintiff argues that Defendant Officers used his admitted traffic violation as a pretext, and that their true motivations were (1) investigation of the suspected domestic violence

11

warrant, and (2) racial profiling. Resp. ¶¶ 6-10. Both claims are red herrings. The Supreme Court has long held that its "cases foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." *Whren v. United States*, 517 U.S. 806, 813 (1996). "Not only have we never held, outside the context of inventory search or administrative inspection (discussed above), that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment; but we have repeatedly held and asserted the contrary." *Id.* at 812. "The test is objective, not subjective. Accordingly, the officer's 'subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.'" *Sam v. Richard*, 887 F.3d 710, (5th Cir. 2018) (quoting *Devenpeck*, 543 U.S. at 153).

Regarding Plaintiff's repeated (but unsupported) allegations of racial profiling, the Supreme Court noted in *Whren* that it "of course agree[d] that the Constitution prohibits selective enforcement of the law based on considerations such as race. But the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." 517 U.S. at 813. Plaintiff has neither asserted an equal protection claim nor produced any evidence of racial profiling; his accusations of racism against Defendant Officers are unsupported, conclusory, and baseless.

Although Plaintiff complains that Officer Guab did not explain the situation to him and that Defendant Officers did not have probable cause to remove Plaintiff from his vehicle, he offers no case law to suggest that either of those actions were constitutionally required. Indeed, Plaintiff's response ignores *Pennsylvania v. Mimms,* in which the Supreme Court held that an officer could

order a driver out of the car "as a matter of course" during a traffic stop – no separate probable cause (or any other justification) is required. 424 U.S. 106, 109-10 (1977).

Plaintiff's Response also makes much of a conversation between Guab, Harris, and a DPD sergeant who arrived at the scene after Plaintiff was in custody, calling it an "an effort to find some way to arrest the Plaintiff Hayes and justify their actions," and arguing it is evidence that Plaintiff's arrest was a "mistake." Resp. ¶ 122-23. However, Plaintiff's interpretation of the exchange is both mischaracterization of the conversation and another misunderstanding of the Fourth Amendment's objective standard. The undisputed evidence demonstrates that Guab and Harris corrected the sergeant's misunderstanding of the events preceding his arrival: they explained that Plaintiff committed a traffic violation that prompted their initial contact with him, and that during their encounter Plaintiff resisted arrest by fighting them. Resp. ¶ 123. The sergeant agreed with the officers' assessment and instructed them to check with the jail sergeant about the particulars of the gun possession law. *Id*. Contrary to Plaintiff's assertion, there was no need for the officers to "find some way to arrest the Plaintiff Hayes"; he was already arrested and sitting in the back of their squad car. Moreover, the Supreme Court has repeatedly held that an arresting officer's statement of his reasons for an arrest is irrelevant:

> We rejected the argument [in *Wren*], and we reject it again here. Subjective intent of the arresting officer, *however* it is determined (and of course subjective intent is *always* determined by objective means), is simply no basis for invalidating an arrest. Those are lawfully arrested whom the facts known to the arresting officers give probable cause to arrest.

*Devenpeck*, 543 U.S. at 154-55 (emphasis in original); *see Wren*, 517 U.S. at 812-13.

In summary, Plaintiff has failed to meet his summary judgment burden, and devotes his Response to irrelevant arguments and misstatements of the record. The undisputed summary judgment evidence unequivocally shows that Officers Guab and Harris had

probable cause to arrest Plaintiff based on the facts and information known to them at the time. Plaintiff has failed to point to any evidence raising a genuine issue as to whether Defendant Officers lawfully arrested him. Therefore, Plaintiff's Fourth Amendment unlawful seizure claim fails as a matter of law and Defendant Officers are entitled to summary judgment on this claim.

**C.     Plaintiff has failed to raise a genuine issue as to whether Defendant Officers' use of force was excessive.**

To prevail on a Fourth Amendment excessive force claim, a plaintiff must show "(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Craig*, 49 F.4th at 409. "Physical force may be necessary to ensure compliance when a suspect 'refus[es] to comply with instructions.'" *Id*. at 412 (quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009)). "A use of force is reasonable if an officer uses 'measured and ascending actions that correspond[ ] to [a suspect's] escalating verbal and physical resistance.'" *Craig*, 49 F.4th at 412 (quoting *Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012)). Videos of the incident indisputably show that Plaintiff refused to comply with officers' commands and that he verbally and physically resisted arrest. The undisputed evidence further shows that despite Plaintiff's noncompliance and physical resistance, Defendant Officers and their colleagues managed to gain control of Plaintiff, using reasonable and far *less* force than was constitutionally permissible, and take him into custody.

**1.     Plaintiff has misrepresented his noncompliance and resistance against the officers.**

Plaintiff describes his behavior toward the police as "at most offering passive non-violent resistance and posed absolutely no threat and was quickly in full surrender to Defendant Officers Guab and Harris." Resp. ⁋ 132. The video evidence, however, belie Plaintiff's version, and show

14

what transpired during the incident from multiple angles.[1] *See* App. Ex. 1 (Harris BWC) at 0:46-6:07; Ex. 2 (Whitman BWC) at 0:40-1:13; Ex. 4 (Guab BWC) 0:00-3:38; Ex. 5 (Luciano BWC) at 0:33-2:42; Ex. 21 (Dashcam) 0:00-4:10.

Plaintiff has also abandoned some of the allegations about his own actions that he made in his unsworn complaints. For example, Plaintiff claimed in his pleadings that "[a]s he was compliantly handing Defendant Officer Guab his driver's license, Plaintiff Hayes disclosed to Defendant Officer Guab that he had a handgun in the vehicle and that the gun was lawfully registered in his name." Compl. (Dkt. No. 1) ¶ 20; 1st Am. Compl. (Dkt. No. 27) ¶ 26. However, neither his Response nor his sworn affidavit repeat these claims that he disclosed the gun to Officer Guab prior to its discovery. In fact, the videos show that Plaintiff did not mention the existence of the gun until after Officer Whitman spotted it in Plaintiff's right front pants pocket, at which time Plaintiff yelled "Oh! Oh! No, this is my gun! This is my gun! This is my gun!" while trying to rip his right hand out of Officer Whitman's grasp. App. Ex. 1 (Harris BWC) at 1:45-1:56; Ex. 2 (Whitman BWC) at 0:56-1:14; Resp. ¶ 20. The videos also show that Plaintiff did not tell the officers at that time that the handgun was legally registered in his name. *Id.*

Plaintiff also argues that "[b]ased on the fact that Plaintiff Hayes' gun was in fact a lawfully registered weapon and did not pose a threat to anyone at the scene of the incident, Defendant Officers Guab and Harris did not have an objective reason to believe that the gun posed a risk [*sic*] their safety." Resp. ¶ 21. A handgun concealed in the pocket of an irate, irrational, noncompliant, and physically resisting suspect poses a very serious threat to the safety of everyone present, regardless of whether the gun was "legally registered in [Plaintiff's] name." Pl. App. at 004.

---

[1] The Statement of Undisputed Facts section of Defendants' opening brief contains a play-by-play description of the videos with precise time stamps for easy reference. *See* Dkt. No. 31 at 6-12.

## 2. Plaintiff has misrepresented the types of force the officers used against him.

In his unsworn First Amended Complaint, Plaintiff repeatedly claimed that Officers Guab and Harris joined other unnamed officers[2] in "kicking, punching, and tasing Plaintiff Hayes." 1st Am. Compl. ¶¶ 87, 88, 94, 125. However, in his affidavit (which, unlike his pleadings, must be given under penalty of perjury), Plaintiff does not claim that any of the officers punched, kicked or tased him. As discussed in Defendants' opening brief at 8-11, the officers' BWC and dashboard camera videos definitively prove that these allegations are false, and Plaintiff has now quietly abandoned them.

Plaintiff also claimed that "the Officers hog tied Plaintiff Hayes' feet and they violently placed him in the back of one of [sic] a Dallas Police Department cruiser." Resp. ℗ 29; *see also* 1st Am. Compl. ¶ 45. A "hog-tie" is a restraint in which the detainee is positioned "on his stomach, [and] the handcuffs around his wrists were connected to the handcuffs around his ankles." *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 341 (5th Cir. 2020). The videos show that Plaintiff was never hog-tied. *See* App. Ex. 6 (Grajeda BWC) 0:40-2:07 (Officer Grajeda fastened a plastic ziptie around Plaintiff's ankles while Plaintiff yelled, kicked and pulled his feet away, and then the officers lift Plaintiff into a standing position).

Plaintiff also pleaded that the officers "pull[ed] Plaintiff Hayes' arm out of his shoulder socket." 1st Am. Compl. ¶¶ 87, 88, 94, 125; *see also* Resp. ¶ 26 ("one of the Officers at the scene pulled Plaintiff Hayes' arm out of his shoulder socket").[3] Plaintiff does not identify which officer

---

[2] Throughout his pleadings, Response, and affidavit, Plaintiff frequently makes claims about what "officers" purportedly did without specifying which officer(s) took which actions. The Fifth Circuit has clearly stated that each defendant's conduct must be examined individually. *See Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007) (reversible error to consider defendants' actions collectively).

[3] In his affidavit, Plaintiff does not claim that his shoulder was pulled out of its socket or otherwise dislocated. Pl. App. at 001-07. He claims "[a]nother Police Officer was pulling on my arm and almost broke

purportedly did this in either his Response or his affidavit, nor does he point to any video footage purportedly showing his arm being pulled from his shoulder socket. Thus, he has no evidence that either Guab or Harris inflicted this purported injury upon him, particularly as none of the videos show the officers handling Plaintiff's arms inappropriately.

Plaintiff also repeatedly accused the officers of "pinning Plaintiff Hayes with their shins on his skull, neck and back" and falsely claimed that "one or more of the Officers can be seen dangerously pressing with his shin on the back of Plaintiff Hayes' neck and applying downward force pinning Plaintiff Hayes' skull, neck and back to the concrete." Resp. ¶ 24; *see also* 1st Am. Compl. ¶¶ 87, 88, 94, 125. Guab's and Harris's BWC videos show that neither of them placed their shins on Plaintiff's skull, neck or back. *See* App. Ex. 1 (Harris BWC) at 1:40-6:26; Ex. 4 (Guab BWC) at 0:00-3:38. The screenshot embedded in Resp. ¶ 24 is taken from Officer Luciano's BWC video at 10:52:50 a.m.; the officer on the left in the screenshot is Officer Nonnenmacher. App. Ex. 5 at 2:12. A four-second segment of video from which Plaintiff's screenshot is taken (Ex. 5 at 2:10-2:13) shows more clearly that Officer Nonnenmacher is not "dangerously pressing with his shin on the back of Plaintiff Hayes' neck" or back. Resp. ¶ 24. Instead, he is positioned with his left knee and upper shin on the ground near the juncture of Plaintiff's neck and right shoulder, his right leg angled out to the side, his right foot in road, and his right hand periodically on the side of Plaintiff's head holding it to the pavement.[4] Officer Nonnemacher remained in that same

---

[4] it" and "I have limited range in my right shoulder and pain when I try to use it even for minimal things like playing with my children." *Id*. at 004-05. An affidavit from a doctor of osteopathic medicine who "practice[s] general medicine" claims that "the Dallas Police Officer's restraint holds, body weight and pulling of Mr. Hayes' arms caused him to suffer physical injuries to his right shoulder" "indicative of a rotator cuff injury," with no mention of dislocation. *Id*. at 009.

[4] The best view of the position of Officer Nonnenmacher's left knee and shin is found at App. Ex. 2 (Whitman BWC) at 3:40-5:15. This segment also provides a close-up view of how Plaintiff continued to resist arrest by yelling and thrashing against the officers' restraint. The officers held onto Plaintiff's upper arm and shoulder area instead of putting pressure on his back. Despite being restrained by at least three

position from 10:51:19 until the officers lifted Plaintiff to his feet at 10:52:53 a.m. *See* App. Ex. 2

(Whitman BWC) at 3:40-5:15 Ex. 5 (Luciano BWC) at 0:43-2:16; Ex. 7 (Greene BWC) at 0:27-

0:51.

> Plaintiff's Response also made the following accusation without any citation to the record:

> The Officers then proceeded to press on Plaintiff Hayes' neck even though the same
> law enforcement restraint technique has resulted in the death of detainees in cities
> across the United States – the most glaring examples being the tragic deaths of
> George Floyd and Tony Timpa[5] – and is apparently the same "lateral vascular neck
> restraint" that the Defendant City of Dallas has represented that it disfavors but,
> based on their failure to discipline any of the Defendant Officers in this case, does
> not forbid and in fact can be said to defacto [*sic*] endorse.

Resp. ¶ 25. Plaintiff also claimed in his affidavit that "[a]fter the Police Officers pulled me out, I

felt one Police Officer put his foot on my neck." Pl. App. at 004. A vascular neck restraint (also

known as the carotid restraint technique) applies pressure to blood vessels on the sides of the neck

in order to reduce blood flow to the brain, which quickly leads to voluntary compliance or

temporary unconsciousness. William P. Bozeman, et al., *Safety of Vascular Neck Restraint Applied

by Law Enforcement Officers*, 92 J. Forensic & Legal Med. 102446 (Nov. 2022). As shown by the

video segments referenced in the preceding paragraph and the screenshots on page 9 of

Defendants' opening brief plainly show, no one pressed or used a lateral vascular neck restraint on

Plaintiff's neck, least of all Officers Guab or Harris.

In light of Plaintiff's constant noncompliance and resistance, the type and amount of force

Defendant Officers used to remove Plaintiff from his car and take him into custody was eminently

---

officers, Plaintiff nonetheless managed to roll from a prone position onto his right side. *Id*. at 4:11-4:35.
Another helpful clip depicting Officer Nonnenmacher's position is found at App. Ex. 5 (Luciano BWC) at
0:48-0:51; it shows Plaintiff briefly lift his head and neck off the ground in front of Nonnenmacher's left
knee.

[5] None of the officers used a lateral vascular neck restraint or made any contact whatsoever with Tony
Timpa's neck, nor did anyone except Plaintiff Hayes ever allege that they did. *See generally Timpa v.
Dillard*, 20 F.4th 1020 (5th Cir. 2021).

reasonable. The Fifth Circuit has frequently found the use of *far more* force to be reasonable in similar factual situations. *See, e.g.*, *Craig*, 49 F.4th at 409; *Solis v. Serrett*, 31 F.4th 975, 983 (5th Cir. 2022); *Betts v. Brennan*, 22 F.4th 577, 583 (5th Cir. 2022) (use of taser not unreasonable); *Livingston v. Texas*, No. 22-240719, 2023 WL 4931932 (5th Cir. Aug. 2, 2023); *Ramirez v. Martin*, No. 22-10011, 2022 WL 16548053, at *2-*4 (5th Cir. Oct. 31, 2022); *Walker v. City of Houston*, No. 22-20537, 2023 WL 6457926, at *3-*5 (5th Cir. Oct. 4, 2023) (tackle and "three to four body shots" not unreasonable). Defendant Officers' actions did not violate Plaintiff's constitutional rights, and they are entitled to summary judgment on this claim.

**D.    Defendant Officers are entitled to qualified immunity.**

Additionally, Officers Guab and Harris have asserted the defense of qualified immunity. In determining whether an officer is entitled to qualified immunity, courts engage in a two-part analysis that can be performed in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). One part of the analysis entails "assess[ing] whether a statutory or constitutional right [were] violated on the facts alleged." *Id*. The plaintiff must show "that the official violated [his or her] statutory or constitutional right." *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011). As discussed above in Sections B and C, the evidentiary record indisputably shows that Defendant Officers did not violate Plaintiff's constitutional rights.

In the second part of the analysis, a plaintiff must show that the right was "clearly established" at the time of the challenged conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Because "'police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue,'" to defeat Defendant Officers' assertion of qualified immunity, Plaintiff must point to factually analogous, precedential cases decided prior to the incident. *Craig*, 49 F.4th at 417 (quoting *Darden v. City of Fort Worth*, 880 722, 727 (5th Cir.

2018)). As Defendants predicted in their opening brief, Plaintiff has failed to point to factually analogous cases for either of his claims.

### 1. Plaintiff has failed to point to any analogous cases showing that his arrest violated clearly established law.

With regard to his false arrest claim, Plaintiff has failed to proffer any Fifth Circuit or Supreme Court cases in which a court found that an arrest under these circumstances lacked probable cause and was objectively unreasonable. Plaintiff's Response cited four cases, but only one case is binding precedent in the Fifth Circuit: *Maryland v. Garrison*, 480 U.S. 79 (1987).

In *Garrison*, officers obtained and executed a search warrant of the entire third floor of a structure under the mistaken belief that the entire floor was one dwelling unit occupied by the target of the warrant; in fact, the third floor contained a second apartment occupied by an individual unrelated to the investigation. *Id.* at 81. "Before the officers executing the warrant became aware that they were in a separate apartment" occupied by Garrison, they discovered drug contraband for which Garrison was convicted. *Id.* at 80. In holding that the contraband should not be suppressed, the majority reasoned that "[w]hile the purposes justifying a police search strictly limit the permissible extent of the search, the Court has also recognized the need to allow some latitude for honest mistakes." As an illustration, the Court discussed a prior case in which officers arrested the wrong person due to an "objectively understandable and reasonable" misidentification. *Id.* at 87-88. This case should be disregarded because its facts are completely different from this case. *Garrison*'s emphasis on reasonable mistakes also contradicts Plaintiff's already-irrelevant argument that it was unreasonable for the officers to stop him when his name is spelled "Silvester" on his driver's license while the name on his car registration and the domestic violence warrants was spelled "Sylvester."

Plaintiff cites three other cases that cannot constitute binding precedent for purposes of qualified immunity: *Jimerson v. Lewis*, 94 F.4th 423 (5th Cir. 2024); *Rogers v. Hooper*, 271 F. App'x 431 (5th Cir. 2008); and *Hartsfield v. Lemacks*, 50 F.3d 950 (11th Cir. 1995). Like *Garrison*, all three cases examine factually inapposite situations in which officers executed a search warrant on the wrong house. *Jimerson* cannot represent clearly established law at the time of the incident because it was decided three years after the 2021 incident at issue in this case. *See Craig*, 49 F.4th at 419 (decisions issued after the incident cannot provide fair notice). Helpfully, the plaintiff in *Jimerson* cited *Rogers* and *Hartsfield* in asking the Fifth Circuit to deny qualified immunity, and the Court explained why those cases are nonprecedential: the unpublished *Rogers* ruling is "a nonprecedential opinion of this court" pursuant to Fifth Circuit Rule 47.5.4, and *Hartsfield* is "nonprecedential in the Fifth Circuit because it was issued by a different circuit court of appeals." *Jimerson*, 94 F.4th at 430. Plaintiff has failed to identify even a single analogous case, and therefore Defendant Officers are entitled to qualified immunity on this claim.

### 2. Plaintiff has failed to point to any analogous cases showing that Defendant Officers' use of force violated clearly established law.

Plaintiff's Response failed to point to any Fifth Circuit or Supreme Court cases in which a court examined a factual situation similar to the events depicted in the officers' body- and dash-camera videos and concluded that the force the officers used was clearly excessive and objectively unreasonable. Instead, Plaintiff "pointed to several cases that discuss the excessive force issue at a 'high level of generality'—precisely what the Supreme Court has repeatedly advised courts they cannot do in analyzing qualified immunity claims." *Craig*, 49 F.4th at 419. Plaintiff performs at least some analysis on two cases: *Hudson v. McMillian*, 503 U.S. 1 (1992), and *Wilkens v. Gaddy*, 559 U.S. 34 (2010). However, both of these cases address cruel and unusual punishment claims made by prison inmates under the Eighth Amendment, and thus are inapplicable to excessive force

claims brought by pretrial detainees such as Plaintiff. *See Velazquez v. Baker*, No. 5:20-CV-078-BQ, 2021 WL 812505, at *5 (N.D. Tex. Jan. 28, 2021). (noting the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015), which abrogated "lower courts' application of Eighth Amendment excessive force standards from *Hudson v. McMillian*, 503 U.S. 1 (1992) to pretrial detainees"). These cases are also factually inapposite because their underlying incidents took place in prisons rather than during traffic stops or other arrests. Plaintiff has failed to satisfy his burden, and thus Defendant Officers are entitled to qualified immunity and summary judgment on his excessive force claim as well.

### E.   In the absence of an underlying constitutional violation, Plaintiff's claims against the City fail as a matter of law.

There can be no basis for municipal liability in the absence of an underlying constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 798-99 (1986); *see also Alpha v. Hooper*, 440 F. 3d 670, 672 (5th Cir. 2006) (same). If the Court determines that the officers did not deprive Plaintiff of his constitutional rights, then Plaintiff's municipal liability claims against the City necessarily fail as a matter of law and must be dismissed. *Heller*, 475 U.S. at 798-799.

Respectfully submitted,

CITY ATTORNEY OF THE CITY OF DALLAS

Tammy L. Palomino
City Attorney

*/s/ Lindsay Wilson Gowin*
Senior Assistant City Attorney
Texas State Bar No. 24111401
lindsay.gowin@dallas.gov

7DN Dallas City Hall
1500 Marilla Street
Dallas, Texas 75201
Telephone:     214-670-3519
Telecopier:    214-670-0622

ATTORNEYS FOR DEFENDANTS HOLLY HARRIS,
WALTER GUAB, AND THE CITY OF DALLAS

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2024, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the CM/ECF system which will send notification to case participants registered for electronic notice. I further certify that to the extent applicable I have served all case participants not registered for electronic notice by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

s/ *Lindsay Wilson Gowin*
Senior Assistant City Attorney