# United States District Court
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| SILVESTER HAYES § | |
| § | |
| v. § | |
| § | CIVIL ACTION NO. 3:23-CV-2271-S |
| CITY OF DALLAS, HOLLY HARRIS, § | |
| WALTER PAUL GUAB, and DALLAS § | |
| POLICE OFFICERS DOES 1 § | |
| THROUGH 10 § | |

### MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendants Holly Harris, Walter Guab, and the City of Dallas's Motion for Summary Judgment ("Motion") [ECF No. 30]. The Court has reviewed the Motion, Defendants' Brief in Support of the Motion ("Defendants' Brief") [ECF No. 31], Plaintiff Silvester Hayes's Response in Opposition to the Motion ("Response") [ECF No. 39], Plaintiff's Brief in Support of the Response ("Plaintiff's Brief") [ECF No. 40], Defendants' Reply in Support of the Motion [ECF No. 49], the summary judgment evidence, and the applicable law. For the following reasons, the Court **GRANTS** the Motion.

### I. BACKGROUND

This 42 U.S.C. § 1983 case arises from a confrontation between Plaintiff Silvester Hayes and Dallas police officers. On October 16, 2021, Defendants Walter Guab and Holly Harris ran a registration check on a vehicle while on patrol. Defs.' App. in Supp. of the Mot. ("Defendants' Appendix") [ECF No. 17] 7. They cross-referenced the owner's name with another system and "observed a person with the name 'Sylvester Hayes' who had a felony warrant for family violence." *Id.*; *see also* Pl.'s First Am. Compl. ("Complaint") [ECF No. 27] ¶ 21. Subsequently, Plaintiff, who was driving the car, failed to signal before turning left. Defs.' App. 7; *see also* Pl.'s

App. in Supp. of His Resp. ("Plaintiff's Appendix") [ECF No. 41], Ex. 1 [ECF No. 41-1] 3. Guab and Harris initiated a traffic stop based on this traffic violation. Defs.' App. 7.

From this point forward, various body-worn cameras and dash cameras captured the ensuing events. After pulling Plaintiff over, Guab gets out of the car, walks to the driver's side window of Plaintiff's vehicle, and begins speaking with Plaintiff. Defs.' App., Ex. 21, at 00:20-46; Defs.' App., Ex. 1, at 00:14-24. Harris walks up and joins him. Defs.' App., Ex. 1, at 00:14-20; Defs.' App., Ex. 21, at 00:47-01:00. After complaining about being pulled over, Defs.' App., Ex. 1, at 00:24-36, Plaintiff hands Guab his driver's license, *id.* at 00:37-38. Guab hands the license to Harris and returns to Plaintiff's window. *Id.* at 00:39-46. Harris appears to confirm that Plaintiff is the person subject to the felony warrant. *Id.* at 00:44-45. Guab then directs Plaintiff to step out of the car and attempts, unsuccessfully, to open Plaintiff's door via the outside handle. *Id.* at 00:46-49. Guab reaches in through the open window, unlocks the car door, and again tells Plaintiff to step out. *Id.* at 00:50-56. Plaintiff does not do so, and Guab opens the now-unlocked door. *Id.* at 00:56-58.

Through the open door, Guab informs Plaintiff that he is being detained and directs him again to step out. *Id.* at 00:59-01:09. Guab repeats the command to step out several more times and warns Plaintiff that he will be tased if he does not comply. *Id.* at 01:10-26. Plaintiff continues to refuse, and Guab reaches into the car to grab him, all the while repeatedly telling Plaintiff to step out of the car. *Id.* at 01:27-33. Other police officers join Guab and Harris outside the car door and assist Guab in attempting to pull Plaintiff out of the car by his left arm. *Id.* at 01:33-46.

As the officers are trying to remove Plaintiff from the car, non-party Officer Whitman opens the passenger door and orders Plaintiff to get out of the car. Defs.' App., Ex. 2, at 00:47-52. Whitman sees that Plaintiff has a gun in his right pocket and alerts the other officers at the scene.

2

*Id.* at 1:01-05; Defs.' App, Ex. 1, at 01:47-51. Plaintiff yells that it is his gun. Defs.' App., Ex. 1, at 01:50-53. Whitman takes the gun from Plaintiff, stating that he "got it." Defs.' App., Ex. 2, at 01:13-15. The officers on the driver's side of the car manage to pull Plaintiff out of the car, and he falls to the ground. Defs.' App., Ex. 1, at 01:54-02:02; Pl.'s App., Ex. 1, at 4. A handcuff dangles from his left wrist, and Harris briefly grabs his left hand. Defs.' App., Ex. 1, at 01:52-02:00.

Officers, including Guab, hold Plaintiff down on the ground and tell him to stop resisting. *Id.* at 02:00-20. Harris and Guab grab Plaintiff's left wrist and try to hold it behind his back, while another officer does the same with Plaintiff's right wrist. *Id.* During this time, Plaintiff is squirming, appears to be trying to stand up, and accuses one of the officers of putting his or her foot on Plaintiff's neck. *Id.* However, the body camera footage shows that the officer has his foot on the ground and his knee on the top part of Plaintiff's back. Defs.' App., Ex. 2, at 01:29-35.

Plaintiff flips over onto his back, and Harris holds down his right leg with both hands. Defs.' App., Ex. 1, at 02:46-51. Plaintiff pulls his other leg toward Harris and flips back onto his stomach. *Id.* at 02:52-55. Harris holds his right leg down with both hands. *Id.* at 02:55-03:12. Another officer intermittently holds Plaintiff's head down so that his cheek is against the ground. Defs.' App., Ex. 2, at 02:07-28. The same officer also has his hand on the back or side of Plaintiff's neck twice—once for approximately three seconds and the second time for approximately eight seconds. Defs.' App., Ex. 4, at 00:10-13, 00:18-26.

The officers stand Plaintiff up. Defs.' App., Ex. 1, at 03:23. He continues to resist them and yell loudly. *Id.* at 03:23-27. Harris briefly puts her hands on Plaintiff's chest before moving some distance away, and Guab is standing nearby. *Id.* at 03:26-30. Guab assists the other officers in facing Plaintiff toward a police vehicle and holding him against it. *Id.* at 03:24-35.

3

As Harris walks around, talking to someone on the radio, a group of officers, including Guab, attempt to walk Plaintiff to a police vehicle. *Id.* at 03:41-57. Plaintiff continues to yell and physically resist. *Id.* As the officers attempt to push Plaintiff into the police car, one unidentified officer—neither Guab nor Harris—wraps his fingers around Plaintiff's throat. *Id.* at 03:59-04:03. The same officer appears to briefly raise his knee to Plaintiff's stomach and then pushes down on the back of Plaintiff's head in an apparent effort to make him duck and get inside the vehicle. *Id.* at 04:04-11. Plaintiff continues strenuously resisting. *Id.*

As the officers are trying to get Plaintiff into the car despite his resistance, Plaintiff falls to the ground. *Id.* at 04:15-24. Guab calls for leg restraints. *Id.* at 04:26-27. While waiting on the leg restraints, a group of officers not including Guab or Harris holds Plaintiff down on the ground. *Id.* at 04:34-45. One officer has his knee on the ground near Plaintiff's neck and intermittently holds Plaintiff's arm and the side of Plaintiff's face down with his hand. Defs.' App., Ex. 2, at 03:40-04:30; Defs.' App., Ex. 5, at 00:44-01:00, 01:13-41, 2:10-11; Defs.' App., Ex. 7, at 00:43-50. Non-party Officer Grajeda runs over with zip tie-like restraints. Defs.' App., Ex. 1, at 04:41-44; Defs.' App., Ex. 6, at 00:42-50. Guab runs off toward Plaintiff's car. Defs.' App., Ex. 1, at 04:42-51. As the officers continue struggling to restrain Plaintiff's legs, Guab and Harris are walking around and standing some distance away and not touching Plaintiff. *Id.* at 04:52-05:53. Plaintiff accuses an officer of pressing on his pressure points, and the officer acknowledges that he is doing so. Defs.' App., Ex. 2, at 04:16-22.

Plaintiff asks to get in the car and repeatedly states that he will get in. *Id.* at 04:29-37. As Grajeda is trying to restrain Plaintiff's legs, Plaintiff kicks one of his legs away from Grajeda. Defs.' App., Ex. 6, at 01:27-29. The officers then finish restraining Plaintiff's legs by putting restraints around his ankles and stand him up. *Id.* at 01:45-2:07; Defs.' App., Ex. 2, at 05:12-21.

4

Plaintiff continues to argue with the officers. Defs.' App., Ex. 2, at 05:23-28. The officers finally manage to get Plaintiff into the vehicle. *Id.* at 05:29-40.

As officers were getting Plaintiff into the car, Harris checked Plaintiff's driver's license against the system. Defs.' App., Ex. 1, at 05:58-06:28. Although the video footage is not entirely clear, it appears to be at that point that Harris realized that Plaintiff—Silvester Hayes—was not the same as the person with the felony warrant—Sylvester Hayes. *See id.*; *see also* Defs.' App., Ex. 11, at 03:23-33 (Officer Harris stating that Plaintiff had an outstanding "ticket"); Defs.' App. 7 (indicating that Plaintiff only had a warrant for speeding). As a result of his encounter with the officers, Plaintiff suffered a torn rotator cuff, post-traumatic stress disorder, and mild insomnia. Pl.'s App., Ex. 2 [ECF No. 41-1] 8-9.

Two years after the incident, Plaintiff brought suit under 42 U.S.C. § 1983. Compl. ¶ 1. Plaintiff brings causes of action for excessive force in violation of the Fourteenth Amendment[1] and unlawful arrest in violation of the Fourth Amendment against Guab and Harris. *Id.* ¶¶ 77-126. Plaintiff also brings a Fourth Amendment claim against Defendant City of Dallas under a municipal liability theory. *Id.* ¶¶ 127-37. Plaintiff names Dallas Police Officers Does 1 Through 10 ("Doe Defendants") as defendants in the Complaint, but he does not expressly bring any causes of action against them. *See id.* ¶ 6.

## II. LEGAL STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination,

---

[1] If, as here, an excessive force claim "arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 394 (1989); *see also Valencia v. Wiggins*, 981 F.2d 1440, 1444 (5th Cir. 1993) (citation omitted). Therefore, the Court will analyze Plaintiff's claim under Fourth Amendment standards.

courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, he "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) showing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322-25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "[C]onclusory statements, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010). The Court resolves factual controversies in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *McCallum Highlands, Ltd. v. Wash. Cap. Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. ANALYSIS

"Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (citation omitted). To state a claim under Section 1983, a plaintiff must allege facts showing (1) a deprivation of a right secured by the

Constitution and the laws of the United States; and (2) that the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005) (citation omitted). "Claims under § 1983 may be brought against persons in their individual or official capacity, or against a governmental entity." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997)).

Here, Plaintiff brings Section 1983 claims against Guab and Harris in their individual capacities and against the City of Dallas under a theory of municipal liability. Guab and Harris argue that they are entitled to summary judgment based on qualified immunity. Defs.' Br. 16-28. The City of Dallas contends that Plaintiff has not pleaded an underlying constitutional violation and thus cannot hold it liable under Section 1983. *Id.* at 28-29.

### A. Qualified Immunity

"Qualified immunity protects officers from suit unless their conduct violates a clearly established statutory or constitutional right." *Edmiston v. Borrego*, 75 F.4th 551, 558 (5th Cir. 2023) (cleaned up), *cert. denied sub nom. Crandel v. Hall*, 144 S. Ct. 1002 (2024). When an official asserts qualified immunity, the burden is on the plaintiff to demonstrate that the defendant is not entitled to qualified immunity. *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 329-30 (5th Cir. 2020) (citation omitted). The plaintiff must show (1) that the official violated a statutory or constitutional right and (2) that the right was clearly established at the time of the challenged conduct. *Roque v. Harvel*, 993 F.3d 325, 331 (5th Cir. 2021) (citation omitted).

7

*i. Violation of Constitutional Right*

*a. Excessive Force*

Plaintiff contends that Guab and Harris used excessive force in effectuating his arrest. *See, e.g.*, Pl.'s Br. ¶ 105. To establish an excessive force claim, the plaintiff must establish (1) an injury, (2) that resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable. *Ratliff v. Aransas County*, 948 F.3d 281, 287 (5th Cir. 2020) (citation omitted). "Our precedents recognize that inquiries regarding whether a use of force was 'clearly excessive' or 'clearly unreasonable . . . are often intertwined,' and we consider those questions together . . . ." *Darden v. City of Fort Worth*, 880 F.3d 722, 728 (5th Cir. 2018) (first alteration in original) (quoting *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017)).

As to the first element, Plaintiff has demonstrated an injury. He submitted an affidavit from Dr. Adrienne Grant, D.O., averring that Plaintiff suffered a torn rotator cuff, post-traumatic stress disorder, and insomnia. Pl.'s App., Ex. 2, at 8-9. But Plaintiff has not satisfied the second and third elements because his injuries did not result directly and only from an unreasonable, excessive use of force by Guab or Harris.

The Court's inquiry into the excessiveness and reasonableness of the use of force depends on "the facts and circumstances of each particular case." *Darden*, 880 F.3d at 728 (quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 729 (quoting *Graham*, 490 U.S. at 396). This analysis "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Harmon v. City of Arlington*, 16 F.4th 1159,

1163 (5th Cir. 2021) (quoting *Graham*, 490 U.S. at 396-97). "In making this determination, a court should consider the totality of the circumstances, 'including [the following *Graham* factors:] the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Darden*, 880 F.3d at 728-29 (quoting *Graham*, 490 U.S. at 396). Courts also consider "the relationship between the need [for force] and the amount of force used." *Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022) (alteration in original) (citation omitted). The Court first clarifies the use of force in this case before examining each of the *Graham* factors in turn.

The Court notes that much of the force identified by Plaintiff was used by other officers, not Guab or Harris. Ordinarily, "[t]he plaintiff's factual assertions are taken as true to determine whether they are legally sufficient to defeat the defendant's motion for summary judgment." *Craig v. Martin*, 49 F.4th 404, 409 (5th Cir. 2022) (alteration in original) (citation omitted). But where "there is video and audio recording of the event," the Court is "not required to accept factual allegations that are 'blatantly contradicted by the record.'" *Tucker v. City of Shreveport*, 998 F.3d 165, 170 (5th Cir. 2021) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Instead, the Court "view[s] the facts in the light depicted by the videotape." *Id.*

In the videotape, Guab—after repeatedly asking Plaintiff to step out of the car—pulled on Plaintiff's arm and later his side or back to try to get him out of the car. Defs.' App., Ex. 1, at 01:34-02:00. Once Plaintiff was out of the car on the ground, Guab helped hold Plaintiff's arm behind his back. Defs.' App., Ex. 4, at 00:06-24. Guab then held onto Plaintiff's arm and shoulder while officers held him up against a police car and while they attempted to walk him to another police car. *Id.* at 00:38-01:35. Harris briefly grabbed Plaintiff's hand while other officers were pulling him out of the car, helped other officers attempt to hold Plaintiff's hands behind his back,

held Plaintiff's legs down while officers were attempting to restrain him, and put her hands on Plaintiff's chest as officers tried to get him to turn around and face the police car. *See* Defs.' App., Ex. 1, at 01:48-03:28. Harris's entire involvement in the physical struggle with Plaintiff lasted less than two minutes. *See id.* Neither Guab nor Harris—nor any of the other police officers involved— "kick[ed], punch[ed], [or] . . . use[d] their tasers on Plaintiff." Compl. ¶ 39. They also did not "hog tie[]" Plaintiff. *Id.* ¶ 45. Apparently recognizing the errors in his pleadings, Plaintiff dropped these allegations from his Affidavit. Pl.'s App., Ex. 1, at 3-5. In the Affidavit, the only specific assertions with respect to Guab and Harris are that they "started pulling and pushing [Plaintiff] to the ground." *Id.* at 3.

The Court will assume arguendo that the first *Graham* factor, the severity of the crime at issue, weighs against Guab and Harris's use of force. Guab and Harris first stopped Plaintiff for a minor traffic violation—failing to signal before turning left. After the traffic stop, and after Guab informed Plaintiff that he was being detained, Plaintiff resisted arrest by struggling against officers as they attempted to handcuff him and restrain his legs. Defendants concede that "resisting arrest is a Class A misdemeanor under Texas law." Defs.' Br. 19 (citing TEX. PENAL CODE § 38.03). Minor crimes like traffic violations and misdemeanors generally weigh against the use of force. *See, e.g., Deville*, 567 F.3d at 167 (concluding that "the need for force [was] substantially lower" where the plaintiff "was stopped for a minor traffic violation").

However, Guab and Harris thought Plaintiff was the subject of a warrant for felony domestic violence. The severity of the crime evaluation must be "based upon the information the officers had when the conduct occurred." *County of Los Angeles v. Mendez*, 581 U.S. 420, 428 (2017) (citation omitted). Felony domestic violence is a more severe crime than a traffic violation

10

or misdemeanor. Nevertheless, the Court's decision on severity would not change the outcome of this case. So the Court will assume without deciding that this factor weighs against the use of force.

As to the second factor, Plaintiff posed some threat to Guab and Harris. As long as Plaintiff remained in his vehicle, he posed a potential danger to the officers. "A motor vehicle can be used as a dangerous weapon, even when blocked in by a police cruiser." *Brothers v. Zoss*, 837 F.3d 513, 519 (5th Cir. 2016) (citing *Plumhoff v. Rickard*, 572 U.S. 765, 776-77 (2014)). A reasonable officer could have feared that Plaintiff had a weapon in the car; in fact, Officer Whitman later discovered a gun in Plaintiff's pocket. *See id.* (citation omitted). And even when Plaintiff was pulled from the vehicle, he continued to physically struggle while officers attempted to restrain him. This factor weighs in favor of Guab and Harris's use of force.

The third *Graham* factor, whether Plaintiff was actively resisting arrest or attempting to evade arrest by flight, also weighs in favor of finding that the force used by Guab and Harris was not excessive. Guab attempted to negotiate with Plaintiff, telling him multiple times to step out of the car before touching him. Guab did not grab Plaintiff's arm until after he had failed to comply with repeated, clear instructions. "Officers may consider a suspect's refusal to comply with instructions during a traffic stop in assessing whether physical force is needed to effectuate the suspect's compliance." *Deville*, 567 F.3d at 167 (citation omitted); *see also Brothers*, 837 F.3d at 519-20 (concluding that officers were entitled to qualified immunity when they used their hands to pull the plaintiff from his vehicle after he refused to comply with instructions to get out of the vehicle). And Guab did not take Plaintiff to the ground until his efforts to handcuff Plaintiff and pull Plaintiff from the car failed. Officers are entitled to take suspects to the ground in response to non-compliance. *Priest v. Grazier*, 860 F. App'x 343, 347 (5th Cir. 2021) (citation omitted) (holding that officers were entitled to qualified immunity where they pulled the plaintiff out of the

11

car and forced him to the ground when he "did not comply with their repeated instructions" to get out of the car); *see also Hutcheson v. Dallas County*, 994 F.3d 477, 480 (5th Cir. 2021) ("Resisting while being handcuffed constitutes active resistance and justifies the use of at least some force." (citation omitted)). After that point, Guab and Harris held onto Plaintiff's limbs in an attempt to restrain him. Throughout the encounter, the officers were "[f]aced with an uncooperative arrestee" and "properly use[d] 'measured and ascending actions that correspond[ed] to [Plaintiff's] escalating verbal and physical resistance.'" *Cloud v. Stone*, 993 F.3d 379, 384 (5th Cir. 2021) (citation omitted). In sum, Plaintiff's active and prolonged resistance justified Guab's and Harris's uses of force.

Finally, turning to the relationship between the need for force and the amount of force used, the Court notes that Guab and Harris were presented with an uncooperative arrestee who at first resisted passively by refusing to get out of the car and then resisted actively as officers attempted to restrain him. In response to this rapidly evolving situation, Guab and Harris used relatively minor force. They pulled Plaintiff out of his car and occasionally helped hold him down as separate officers were attempting to restrain him, and they later helped move him into a police vehicle. And their use of force only escalated as Plaintiff's noncompliance and resistance escalated, which, as the Court noted above, is appropriate.

Having considered the totality of the circumstances, including the *Graham* factors, the Court concludes that the force Guab and Harris employed was neither clearly excessive nor clearly unreasonable.

### b. False Arrest

Plaintiff argues that Guab and Harris falsely arrested him because they mistakenly identified him as the Sylvester Hayes subject to an outstanding felony warrant. Pl.'s Br. ¶¶ 49-78.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Arrests are seizures of persons and, therefore, must be reasonable under the circumstances to comply with the Fourth Amendment. *See District of Columbia v. Wesby*, 583 U.S. 48, 56 (2018) (citation omitted). To prevail on a Fourth Amendment false arrest claim, a plaintiff must prove (1) that he was arrested, and (2) that the arrest was not supported by the requisite probable cause. *Rhodes v. Prince*, 360 F. App'x 555, 558 (5th Cir. 2010) (citation omitted).

"Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Mesa v. Prejean*, 543 F.3d 264, 269 (5th Cir. 2008) (citation omitted). A police officer who has probable cause to believe that a person committed even a minor offense may arrest that person without violating the Fourth Amendment. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Plaintiff gave Guab and Harris probable cause for his arrest when he failed to use his turn signal before making a left turn, in violation of Texas Transportation Code Sections 545.104(a) and (b). Under Texas law, "[a]ny peace officer may arrest without warrant a person found committing a violation of the subtitle." TEX. TRANSP. CODE. § 543.001. Sections 545.104(a) and (b) "fall under Section 543's purview"; therefore, they granted Harris and Guab arrest authority for the violation. *United States v. Allam*, No. 1:23-CR-00010-MAC, 2023 WL 3398594, at *9 (E.D. Tex. Apr. 24, 2023) (citation omitted); *see also Curley v. Gonzalez*, No. 3:15-CV-1341-L, 2017 WL 4351073, at *3-4 (N.D. Tex. Sept. 30, 2017) (concluding that probable cause for arrest existed where the defendant-officer observed the plaintiff turn right without signaling).

13

*ii. Clearly Established Right*

Although Plaintiff's case fails because he has not shown a constitutional violation, the Court considers the second prong of the qualified immunity analysis for the sake of completeness. The Court concludes that Plaintiff has failed to identify any controlling precedent that would put Guab and Harris on notice that their actions violated Plaintiff's constitutional rights. *See Joseph*, 981 F.3d at 336 (citing *Saucier v. Katz*, 533 U.S. 194, 199 (2001)). Under this second prong of the qualified immunity analysis, courts "determine whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Griggs v. Brewer*, 841 F.3d 308, 312-13 (5th Cir. 2016) (citation omitted); *see also Mullenix v. Luna*, 577 U.S. 7, 11 (2015) ("A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." (cleaned up)). "And a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff*, 572 U.S. at 778-79 (citation omitted). Accordingly, "[a plaintiff] must identify a case that put [the defendant] on notice that his specific conduct was unlawful." *Salazar v. Molina*, 37 F.4th 278, 285 (5th Cir. 2022) (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021)).

As to Plaintiff's excessive force claim, Plaintiff does not identify any cases that clearly establish the law. This failure is unsurprising given that, as set forth at length above, Guab and Harris's actions did not rise to the level of unconstitutional excessive force.

In support of his false arrest claim, Plaintiff points to several cases. He acknowledges that the facts of all of the cases are distinguishable but contends that they stand for the proposition that "the determinative factor of whether an officer is entitled to qualified immunity in a mistaken

14

identity case is whether that officer made reasonable efforts to ensure that the warrant he is executing on a person or place is the <u>correct</u> person or place." Pl.'s Br. ¶¶ 91, 96.

First, Plaintiff relies on *Maryland v. Garrison*, 480 U.S. 79 (1987). *See* Pl.'s Br. ¶¶ 85-88. *Garrison*, unlike this case, involved officers misidentifying an apartment that was subject to a search warrant. 480 U.S. at 80. Second, Plaintiff cites *Rogers v. Hooper*, 271 F. App'x 431 (5th Cir. 2008). *See* Pl.'s Br. ¶ 89. *Rogers* is unpublished and thus "cannot be the source of clearly established law for qualified immunity analysis." *Jimerson v. Lewis*, 94 F.4th 423, 429 n.2 (5th Cir. 2024) (citation omitted). Further, *Rogers* involved a warrant to search a house, not a warrant for a person's arrest. 271 F. App'x at 431-32. Third, Plaintiff cites *Jimerson*, 94 F.4th 423. *See* Pl.'s Br. ¶ 90. *Jimerson* was decided after the incident at issue and thus could not clearly establish the law. And *Jimerson* involved police officers executing a search warrant at an incorrect house. 94 F.4th at 425. Plaintiff also points to an Eleventh Circuit case, *Hartsfield v. Lemacks*, 50 F.3d 950 (11th Cir. 1995). *See* Pl.'s Br. ¶¶ 92-96. This case is nonprecedential in the Fifth Circuit. Moreover, like the other cases cited by Plaintiff, *Hartsfield* dealt with a warrant to search a residence, not a warrant to arrest an individual. 50 F.3d at 955-56.

Even setting aside the factual and other issues with the cases cited by Plaintiff, they all share one fatal flaw. Each case, in Plaintiff's own words, deals with mistaken identity and the question of whether an officer "made reasonable efforts to ensure that the warrant he is executing on a person or place is the <u>correct</u> person or place." Pl.'s Br. ¶ 91. But here, as set forth above, the mistaken identity issue became irrelevant as soon as Guab and Harris witnessed Plaintiff commit a traffic violation. That traffic violation—not the officers' mistake in searching in the system for "Sylvester Hayes" instead of "Silvester Hayes"—provided probable cause for Plaintiff's arrest. *See supra* § III.A.i.b. Therefore, whether Guab and Harris made reasonable efforts to ensure that

Plaintiff was in fact the subject of the outstanding warrant is legally irrelevant, and none of the cases cited by Plaintiff show that Guab and Harris violated Plaintiff's clearly established rights.

For all of the foregoing reasons, the Court concludes that Guab and Harris are entitled to qualified immunity with respect to Plaintiff's Fourth Amendment claims for excessive force and false arrest.

### *B. Municipal Liability*

The Court turns next to Plaintiff's claim against the City of Dallas. "[I]solated unconstitutional actions by municipal employees will almost never trigger [municipal] liability." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citation omitted). As such, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). "The Fifth Circuit interprets *Monell* as requiring a plaintiff to identify '(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy (or custom).'" *Allen v. Hays*, 65 F.4th 736, 749 (5th Cir. 2023) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

A court need not consider municipal liability if it does not find an underlying constitutional violation. *Carvell ex rel. H.A.A.W. v. Gibson*, No. 23-30252, 2024 WL 4533312, at *4 (5th Cir. Oct. 21, 2024) (citing *Hicks-Fields v. Harris County*, 860 F.3d 803, 808 (5th Cir. 2017)). That is so because every municipal liability claim requires "an underlying constitutional violation." *Hicks-Fields*, 860 F.3d at 808 (quoting *Kitchen v. Dallas County*, 759 F.3d 468, 483 (5th Cir. 2014)). For the reasons set forth above, the Court concludes that Plaintiff has not established that Guab or

16

Harris violated his constitutional rights. "That alone forecloses his claim," at least with respect to Guab and Harris's conduct. *Jackson v. City of Hearne*, 959 F.3d 194, 204 (5th Cir. 2020).

But Plaintiff premises his municipal liability claim on the actions of unnamed police officers as well. *See, e.g.*, Pl.'s Br. ¶ 167(b) (arguing that "none of the [Doe Defendants] were disciplined for the excessive force that they used to arrest Plaintiff . . . under an erroneous warrant"). Plaintiff's municipal liability claims involving unnamed officers are predicated on the same two purported constitutional violations discussed above—false arrest and excessive force. *See id.* ¶ 167(c) (contending that the City of Dallas failed to train its officers on verifying a person's identity, proper arrest and confrontation techniques, excessive force, proper seizure, detention, and arrest procedures, use of force against passively resisting individuals, less violent means to seize, detain, or arrest a person, and de-escalation methods). And a municipality "may still be liable if the alleged injuries are not 'solely attributable to the actions of named individual defendants.'" *Bustos v. Martini Club Inc.*, 599 F.3d 458, 467 (5th Cir. 2010) (quoting *Curley v. Village of Suffern*, 268 F.3d 65, 71 (2d Cir. 2001)).

For the reasons set forth above, the Court determines that Plaintiff has not established a false arrest claim against any police officer. Plaintiff's traffic violation provided probable cause for his arrest. *See supra* § III.A.i.b.

As to excessive force, the Court, considering all the factors set forth previously, concludes that no officer on the scene used force that was clearly excessive and unreasonable. Again, the Court finds it helpful to first define the force used. Broadly, the officers helped Guab pull Plaintiff out of his car, assisted in holding Plaintiff down and trying to handcuff him and—later—restrain his legs, and struggled to walk Plaintiff to a police vehicle and to get Plaintiff into the vehicle. Though Plaintiff claims that one or more officers "can be seen dangerously pressing with his shin

on the back of [Plaintiff's] neck" and using a "lateral vascular neck restraint" on Plaintiff, Pl.'s Br. ¶¶ 24-25, these assertions are belied by the video evidence. During the first struggle on the ground, an officer has his foot on the ground and his knee on the top part of Plaintiff's back. Defs.' App., Ex. 2, at 01:29-35. Later, an officer holds Plaintiff's head down so that his cheek is against the ground. *Id.* at 02:07-28. The same officer also intermittently has his hand on the back or side of Plaintiff's neck. Defs.' App., Ex. 4, at 00:10-26. Later, as the officers attempt to push Plaintiff into the police car, an officer wraps his fingers around Plaintiff's throat and appears to raise his knee to Plaintiff's stomach. Defs.' App., Ex. 1, at 03:59-04:03. The same officer then pushes down on the back of Plaintiff's head as he tries to get Plaintiff inside the vehicle. *Id.* at 04:04-11. Finally, during the struggle with Plaintiff outside the police vehicle, one officer has his knee on the ground near Plaintiff's neck and intermittently holds the side of Plaintiff's face down with his hand. Defs.' App., Ex. 2, at 03:40-04:30; Defs.' App., Ex. 5, at 00:44-01:00, 01:13-41, 02:10-11; Defs.' App., Ex. 7, at 00:43-50. Plaintiff accuses an officer of pressing on his pressure points, and the officer confirms that he is doing so. Defs.' App., Ex. 2, at 04:16-22. Throughout this time, Plaintiff is actively struggling against the officers as they attempt to restrain him.

  Having reviewed the evidence, the Court concludes that none of the officers used excessive force. Instead, they "properly use[d] 'measured and ascending actions that correspond[ed] to [Plaintiff's] escalating verbal and physical resistance.'" *Cloud*, 993 F.3d at 384 (citation omitted). Outside of one officer momentarily grabbing Plaintiff's throat and possibly hitting Plaintiff in the stomach with his knee, the officers used relatively minor force, even as Plaintiff screamed, resisted restraint, and refused to get in the police car. And as soon as Plaintiff's wrists and ankles were restrained, the officers put Plaintiff in the police car and then ceased their use of force. The Court finds the use of force neither clearly excessive nor clearly unreasonable; therefore, the officers did

not violate Plaintiff's constitutional rights. And without a constitutional violation, Plaintiff cannot sustain his municipal liability claim against the City of Dallas.

### *C. Doe Defendants*

Finally, Defendants ask the Court to sua sponte dismiss all claims against Doe Defendants. Defs.' Br. 6 n.2. Plaintiff does not address this argument. Even if the Court finds that Plaintiff did not abandon his claims against these Defendants by failing to respond to the Motion on this point, *see Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006), the claims are barred by the applicable statute of limitations.

To the extent Plaintiff asserts claims against Doe Defendants, such claims would arise under 42 U.S.C. § 1983. *See* Compl. ¶¶ 77-96 (asserting excessive force claim against Harris and Guab under Section 1983 and mentioning Doe Defendants' conduct). "Because there is no federal statute of limitations for actions brought pursuant to 42 U.S.C. [§ 1983], federal courts borrow the forum state's general personal injury limitations period." *Beckwith v. City of Houston*, 790 F. App'x 568, 575 (5th Cir. 2019) (citation omitted). Texas's statute of limitations for personal injury claims is two years. *Id.* at 572 (citation omitted). Federal law, however, governs when a claim accrues. *See Piotrowski*, 237 F.3d at 576 (citation omitted). A Section 1983 claim accrues when the plaintiff knows or has sufficient information to know that he has been injured by the defendant's actions. *Id.* (citations omitted). In this case, Plaintiff's claims accrued on October 16, 2021, the date of Plaintiff's arrest. Plaintiff brought suit within two years of October 16, 2021, but he still has not identified Doe Defendants.

"[A]n amended complaint to substitute an individual for a John Doe defendant does not relate back to the date of the original complaint . . . ." *Bond v. Nueces County*, No. 20-40050, 2022 WL 4595000, at *2 n.2 (5th Cir. Sept. 30, 2022) (citation omitted); *see also Balle v. Nueces County*, 952 F.3d 552, 557-58 (5th Cir. 2017) (concluding that an amended complaint does not relate back

19

to the date of the original complaint where the plaintiff substitutes a named individual for a John Doe). The doctrine of equitable tolling is available to preserve Plaintiff's claims if "strict application of the statute of limitations would be inequitable." *Balle*, 952 F.3d at 558 (citation omitted). But Plaintiff has not responded to the Motion on this point, sought discovery, or otherwise "diligently pursued [his] rights as required for equitable tolling of the limitations period." *Bond*, 2022 WL 4595000, at *2 n.2. Indeed, by filing this case on October 16, 2023, the date the statute of limitations ran, Plaintiff all but ensured he would not be able to name Doe Defendants in time. *See Balle*, 952 F.3d at 558. As such, the Court finds no basis for equitable tolling and dismisses Plaintiff's claims against Doe Defendants.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment [ECF No. 30]. This case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

SIGNED April 25, 2025.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**